## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  1:21-cv-22825

SONY MUSIC ENTERTAINMENT; SONY
MUSIC ENTERTAINMENT US LATIN LLC;
ZOMBA RECORDING LLC; ARISTA
MUSIC; ARISTA RECORDS LLC; LAFACE
RECORDS LLC; RECORDS LABEL, LLC;
VOLCANO ENTERTAINMENT III LLC,

                Plaintiffs,

    v.

VITAL PHARMACEUTICALS, INC. *d/b/a* BANG
ENERGY AND JACK OWOC, AN INDIVIDUAL,

                Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Sony Music Entertainment; Sony Music Entertainment US Latin LLC; Zomba Recording LLC; Arista Music; Arista Records LLC; LaFace Records LLC; Records Label, LLC; and Volcano Entertainment III LLC (collectively, "Sony Music"), hereby collectively file this Complaint and Demand for Jury Trial against the defendant Vital Pharmaceuticals, Inc. *d/b/a* Bang Energy ("Bang") and Bang's Chief Executive Officer, Jack Owoc ("Owoc") (together, the "Bang Defendants").

## INTRODUCTION

1.     Sony Music has been at the forefront of recorded music for nearly a century.  Sony Music produces, manufactures, distributes, sells, and licenses some of the most iconic and popular sound recordings of all time, from Michael Jackson's "Thriller", AC/DC's "Thunderstruck", Bruce Springsteen's "Born in the U.S.A." to recent hits such as Doja Cat's "Say So", Lil Nas X's "Old Town Road" and 24kGoldn's "Mood", to countless hits in between.

2.      Bang is a brand of energy drinks and sports nutrition supplements.  It touts itself as "the nation's leading energy and lifestyle brand."  Bang has experienced meteoric growth; is now the third highest-selling energy drink in the United States; and sells products in more than 37 countries. In 2020, Bang's energy drinks experienced year-over-year growth of 80.8%, and $780 million in sales.[1]

3.      Owoc is Bang's Chief Executive Officer.

4.      Bang's explosive growth has been amplified by its use of social media.  The Bang Defendants actively market Bang and Bang-related products (*i.e.*, Bang energy shots) on social media, including TikTok, Instagram, YouTube and Facebook apps and related websites to increase Bang's reach, brand value and sales.

5.      Bang's TikTok account (username @bangenergy) has approximately 1.4 million followers and 4.1 million likes.  Owoc's TikTok account (username @bangenergyceo) separately had 771,000 plus followers and garnered more than 1.9 million likes. Bang's hashtag (#bangenergy) has garnered over 14.1 billion TikTok views, while #bandenergydrink has stirred another 40.8 million views.

6.      Bang's Instagram account (username @bangenergy) has 2.2 million followers and Owoc's Instagram account (username @bangenergy.ceo) has 1.1 million followers. On Instagram, Bang's hashtag (#bangenergy) has 363,000 posts, while the hashtag #bangenergydrink has nearly 50,000 posts.

7.      The Bang Defendants' Facebook account (username @BANGenergy) has over 100,000 followers and nearly 100,000 likes.

---

[1] *See* https://www.bevindustry.com/articles/93233-state-of-the-beverage-industry-energy-drinks-mixes-maintain-steady-growth (last accessed August 3, 2021).

8.     The Bang Defendants have relied on Bang and Owoc's social media accounts (together, the "Social Media Accounts") to promote Bang's products regularly posting videos displaying Bang Energy products including its energy drinks, energy shots and Bang-branded apparel.   The Bang Defendants' videos are choreographed to famous copyrighted sound recordings and musical compositions.

9.     The Bang Defendants brag loudly about the billions of views that their videos have received but have been silent since Sony Music demanded an explanation for the unauthorized use of at least 132 copyrighted sound recordings – owned or exclusively licensed by Sony Music – in no less than 209 videos posted on the Social Media Accounts.

10.     Sony Music informed the Bang Defendants of their infringing use of Sony Music's copyrighted material during a telephone call with Bang's in-house counsel on April 6, 2021 and through a letter sent to Bang on April 13, 2021. In response, the Bang Defendants meekly stated that its Legal Department did not agree with Sony Music's contentions of infringement, but failed to provide any basis for their disagreement.

11.     In its communications with the Bang Defendants, Sony Music specifically identified the posts where its copyrighted material was used without its permission.

12.     Despite being provided with a detailed list of infringing posts, the Bang Defendants nonetheless continued to use Sony Music's copyrighted musical work in their videos as well as make new infringing videos.

13.     Figure 1, for example, is a screen capture from the Bang Defendants' TikTok Account featuring lip-synching to Sony Music's recording of "Please Don't Go" by Mike Posner.



**Figure 1**

14.     Figure 2 is a screen capture of several Bang Influencers wearing Bang Energy branded clothing and dancing to Sony Music's recording of "Bad" by Michael Jackson.



**Figure 2**

15.     Figure 3 is a screen capture of an Instagram post of a Bang Influencer wearing Bang Energy branded clothing and dancing to Sony Music's recording of "Roxanne" by Arizona Zervas.



**Figure 3**

16.     Figure 4 below is a screen capture of unauthorized use of Sony Music's recording of "Shake It" by Metro Station in an Instagram post promoting Bang's energy drink.



**Figure 4**

17.     Sony Music's massive investments in recorded music are protected by copyright law, which grants Sony Music the exclusive rights to, among other things, reproduce, distribute, publicly perform, transmit, and create derivative works of, its sound recordings.

18.     An important portion of Sony Music's return on its investment in recorded music – which it shares with its exclusive recording artists – comes from licensing its recordings and music videos to others who use Sony Music's works in videos, television shows, commercials, on social media, and the like, just like the Bang Defendants have done.

19.     Indeed, the Bang Defendants' use of Sony Music's sound recordings is precisely the type of use upon which Sony Music has built its robust licensing business.

20.     The Bang Defendants' conduct has caused and continues to cause substantial and irreparable harm to Sony Music, while enriching the Bang Defendants at Sony Music's expense and to the detriment of the copyrighted musical works owned and/or controlled by Sony Music. This action seeks to hold the Bang Defendants responsible for their two-hundred-plus acts of willful copyright infringement of Sony Music's copyrighted sound recordings, including the Bang Defendants' unauthorized copying, public performance, digital transmission and creation of derivative works.

21.     By this lawsuit, Sony Music seeks to stop the infringement and to obtain compensation for the Bang Defendants' massive, willful, and deliberate campaign of copyright infringement.

## JURISDICTION AND VENUE

22.     This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

23. The Court has jurisdiction over this action pursuant to 17 U.S.C. §§ 101 *et seq*., 28 U.S.C. §§ 1331, 1338, and 1367.

24. The Court has personal jurisdiction over the Bang Defendants because, among other things: (a) Bang is a Florida corporation with its headquarters and principal address located in the State of Florida; (b) Owoc is domiciled in the State of Florida; (c) the Bang Defendants are doing and have been doing business continuously in the State of Florida; (d) a substantial part of the wrongful acts committed by the Bang Defendants occurred in the State of Florida, including by reproducing, distributing, preparing derivative works based upon, and publicly performing Sony Music's copyrighted works within the State of Florida; and (e) the Bang Defendants' conduct causes injury to, and is directed at, Sony Music and their intellectual property in the State of Florida.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Bang Defendants "reside" in this District and a substantial part of the events giving rise to Sony Music's claims occurred in this District.  Also, Sony Music has been injured in this District as a result of the Bang Defendants' infringing conduct.

## THE PARTIES

A. *Plaintiffs*.

26. Plaintiff Sony Music Entertainment ("SME") is a Delaware general partnership, the partners of which are citizens of New York and Delaware.  SME's headquarters and principal place of business are located at 25 Madison Avenue, New York, New York 10010.

27. Plaintiff Sony Music Entertainment US Latin LLC ("Sony Latin") is a Delaware Limited Liability Company with its principal place of business at 3390 Mary St., Suite 220, Coconut Grove, Florida 33133.

28. Plaintiff Volcano Entertainment III, LLC ("Volcano") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New

York 10010.

29.     Plaintiff Zomba Recording LLC ("Zomba") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

30.     Plaintiff Arista Music ("Arista Music") is a New York partnership with its principal place of business at 25 Madison Avenue, New York, New York 10010.

31.     Plaintiff Arista Records LLC ("Arista Records") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

32.     Plaintiff Records Label, LLC ("Records Label") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

33.     Plaintiff LaFace Records LLC ("LaFace") is a Delaware Limited Liability Company with its principal place of business at 25 Madison Avenue, New York, New York 10010.

34.     Sony Latin, Volcano, Zomba, Arista Music, Arista Records, Records Label, and LaFace are companies owned by or affiliated with SME and are collectively referred to as the "Sony Entities" (collectively, Sony Entities and SME are referred to as "Sony Music," as indicated above).

35.     Sony Music is engaged in the business of producing sound recordings and distributing, selling, and/or licensing the reproduction, distribution, sale, preparation of derivative works based upon, and performance of sound recordings in phonorecords (as defined in 17 U.S.C. § 101), in audiovisual works, and for streaming (*i.e.*, performing) and for downloading over the Internet and through other mediums.  Sony Music invests substantial money, time, effort, and creative talent in discovering and developing recording artists, and in creating, advertising, promoting, selling, and licensing sound recordings embodying the performances of their exclusive recording artists and their unique and valuable sound recordings.

36.     Sony Music owns copyrights and/or exclusive rights in and to many of the most popular sound recordings in the world – including by way of example, "…Baby One More Time" by Britney Spears,  "Sexy Back" by Justin Timberlake, and "All I Want For Christmas Is You" by Mariah Carey– as well as the other recordings identified on the attached **Exhibit 1** (the "Recordings").  The Sony Music plaintiffs respectively: (a) own or exclusively control copyrights in the Recordings and possess certificates of copyright registration in the Recordings; (b) have, as it relates to some works, applied for certificates of copyright registration in the Recordings but have not yet received registrations due to the current backlog at the U.S. Copyright Office;[2] and (c) have the rights to pursue this claim for works originating outside of the United States under the Berne Convention.

37.     As the owner of copyrights in the Recordings, Sony Music possesses the exclusive rights to, among other things, reproduce the Recordings in copies or phonorecords, to prepare derivative works based upon the Recordings, to distribute copies or phonorecords of the Recordings to the public, to perform the Recordings publicly by means of a digital audio transmission and to license these exclusive rights, including over the Internet.

**B.     *Defendants*.**

38.     Bang is a corporation duly organized and existing under the laws of the State of Florida, with its principal place of business in Broward County, Florida.

39.     Owoc is the Chief Executive Officer of Bang and is domiciled in the State of Florida.

## SONY MUSIC'S SOUND RECORDINGS

40.     Sony Music is home to some of the world's most distinguished record labels,

---

[2] Plaintiffs will amend the Complaint after receiving additional certificates of copyright registration.

including Columbia Records, RCA Records, Sony Nashville, Arista Records, and Epic Records, through which it contracts with its world-class recording artists.

41.     Sony Music's roster includes some of the world's most famous artists, spanning over decades. In addition to well-known artists, Sony Music invests heavily in signing and developing new artists, and in marketing and promoting their recordings.

42.     Sony Music generally invests on the front end of an artist's career – through advances, recording, marketing, creative services, promotion, and more – betting that it can help the artist, and that the artist's recordings achieve success.

43.     Sony Music *might* see a return on its investment if an artist's recordings are commercially successful.

44.     Sony Music's financial incentives to invest in artists and their music flow directly from the protections afforded by copyright.

45.     SME and the Sony Entities are, and at all times relevant to this proceeding were, the sole owners or exclusive licensees of all right, title, and interest in and to the copyrights in the sound recordings at issue.

46.     SME's and the Sony Entities' (or their licensor's) copyrights in the sound recordings at issue are valid and are registered with the United States Copyright Office.

## SONY MUSIC'S LICENSING BUSINESS

47.     Sony Music exploits its sound recording copyrights through physical sales and digital distribution (such as downloads), as well as through licensing to third parties.

48.     Licensing the use of sound recordings – including for use in internet-based media – is a substantial revenue driver for all music companies, including Sony Music, especially over the last decade.

49. For example, Sony Music regularly licenses its sound recordings for use in films, video games, television, and social media via the internet.

50. Sony Music has licensing agreements with many types of companies. For example, a license to Peloton allows it to use Sony Music's sound recordings to create themed fitness class videos.

51. Sony Music has also licensed its sound recordings to various companies that compete with Bang, including without limitation Monster Energy and Red Bull, as well as to companies in related markets, often including the right to use the Sony Music content on the Internet.

52. Those who use Sony Music's sound recordings, whether in streaming services, social media, commercials, videos, or otherwise, are obligated to follow copyright laws and obtain permission from Sony Music.

## DEFENDANTS' INFRINGING CONDUCT

**A.     The Bang Defendants Rely on Social Media to Grow their Business**.

53. Bang is the self-proclaimed "nation's leading energy and lifestyle brand."[3] Bang claims to "develop the world's most effective muscle, appearance and performance-enhancing supplementation, beverages and nutrition."[4]

54. Bang products, including its energy drinks and sports nutrition supplements, are sold in all 50 states in the United States and in 37 countries worldwide. (*Id.*)

55. To gain market share and to grow Bang's business, the Bang Defendants have relied on an aggressive and conspicuous social media campaign. The Bang Defendants actively market

---

[3] *See* https://bangenergycasting.com/what-does-it-take/ (last accessed July 22, 2021).

[4] *See* https://bangenergy.com/about/ (last accessed July 22, 2021).

Bang on social media, including the wildly popular TikTok.

56.     Bang is at the forefront of social media advertising.  First, it produces and posts its own video advertisements.  It also runs a social media ambassador program called "Bang Influencers."  The "Bang Influencers" are tasked with creating "unique and remarkable content across all social media platforms."[5] Bang also partners with several well-known TikTok influencers, *i.e.* creators who have garnered a substantial audience of TikTok "followers."  Bang has, for example, partnered with Michael Le, who has 49.6 million TikTok followers and Q Park (nee Joyce Tanner), a YouTuber, who also has 27.1 million TikTok followers.  Bang has an extensive in-house video team that works with the influencers and self-produces social media content.

57.     Upon information and belief, Bang has written agreements with at least some of these third parties.

58.     Bang and its influencers publish videos in which Bang products are highly visible and/or prominently featured (*e.g.*, Bang taste tests).  In the videos, Bang Influencers are known to "sport vibrant outfits with the Bang logo and create fun dance videos or skits with the products."[6] These videos essentially serve as modern-day product placement commercials for Bang's products.

59.     In exchange for making Bang videos and commercials, influencers receive Bang sponsorships and cross-collaborative exposure by which both parties gain influence – the coin of the realm in the social media marketplace – as well as other forms of consideration, including but not limited to free product and in some cases, payment.  Some of the Bang influencers do not

---

[5] *See* https://bangenergycasting.com/what-does-it-take/ (last accessed July 22, 2021).

[6] *See* https://neoreach.com/bang-energy-campaign-teardown/  (last accessed July 22, 2021).

disclose the fact that the videos they create are paid sponsorships or endorsements, contrary to FTC guidelines.

60.    The Bang Defendants own and operate Social Media Accounts, which are directed at and accessible throughout the United States and in the State of Florida.  Together, the Bang Defendants' Social Media Accounts have roughly 5.4 million followers and over 6.1 million likes, and Bang's branded hashtag has netted over 13.8 billion views on TikTok alone, while similarly related hashtags #bangenergydrink, #bangenergy, #bangenergyceo, have generated millions of views.

61.    Bang brags about its social media marketing success: "Today the Bang Energy TikTok account stands at over 1 million followers and #BangEnergy has been viewed 7.6 Billion times. Numbers don't lie."[7]

**B.    The Bang Defendants' Flagrantly Infringe Plaintiffs' Copyrights on Social Media**.

62.    The Bang Defendants did not achieve widespread social media visibility by accident.

63.    To help popularize their videos, the Bang Defendants have posted at least 209 videos on the Bang Social Media Accounts that intentionally added Sony Music's famous copyrighted musical works without Sony Music's permission (the "Infringing Videos").  Those videos include no less than 132 copyrighted works that were owned or controlled by Sony Music at the relevant time.

64.    In addition to posting Infringing Videos on the Bang Social Media Accounts, upon information and belief, the Bang Defendants require Bang Influencers to post Infringing Videos on

---

[7] *See* https://bangenergy.com/blog/its-the-bang-energy-tiktok-takeover/ (last accessed July 22, 2021).

their personal social media accounts. These Infringing Videos created by social media influencers are then reposted on the Bang Defendants' Social Media Accounts.

65.     Figure 5 below features one example of an Infringing Video posted for the Bang Defendants by the wildly popular influencer, Q Park on his own TikTok account using the song "Gimme More" by Britney Spears.



**Figure 5**

66.     Figure 6 below features another example of an Infringing Video posted for the Bang Defendants on Q Park's TikTok account using the song "Roses" by SAINt JHN.



**Figure 6**

67.      On TikTok, users can search for videos based on the songs used in those videos. Unlike other posters on TikTok , however, the Bang Defendants, profit directly or indirectly from the Infringing Videos by, among other things, building brand value and awareness, engaging consumers, and, of course, increasing sales of Bang products. .

68.      The Bang Defendants exploit trending songs to make the Infringing Videos more appealing to users.  For example, the Bang Defendants have posted videos using Doja Cat's hit "Say So," which has appeared in approximately 14.5 million TikTok videos. By their infringing use of trending music, the Bang Defendants are able to gain the attention of TikTok users who would otherwise not have searched for, or been aware, of their products.

69.      Figure 7 below is a screen capture of an Infringing Video from the Bang Defendants' TikTok Accounts that includes movement choreographed to Sony Music's sound recording "Worth It" by Fifth Harmony. The Infringing Video was originally posted July 28, 2020 and remains online despite the fact that Sony Music has informed the Bang Defendants' of the infringing use.



**Figure 7**

70.    By incorporating Sony Music's copyrighted works into the Infringing Videos, and then making those Infringing Videos available to the public without license or authorization from Sony Music, the Bang Defendants are infringing Sony Music's exclusive rights to reproduce, prepare derivative works based upon, distribute, and publicly perform the works listed in **Exhibit 1**.  This infringement includes, but is not limited to: (a) duplicating SME sound recordings and adapting Sony Music's copyrighted works to create new, unauthorized derivative works (*i.e.*, the Infringing Videos); (b) uploading the Infringing Videos to its own computer servers and the computer servers of third-party hosting services and duplicating and reposting Infringing Videos from other social media users own channels; and (c) transmitting the Infringing Videos to consumers via the Bang Social Media Accounts.

71.    Exhibit 1 contains illustrative, non-exhaustive examples of known infringements. Sony Music is continuing to investigate the scope of the Bang Defendants' infringement, including the measures taken by the Bang Defendants to intentionally induce Bang Influencers to infringe

Sony Music's copyrighted works.

72.     Discovery is likely to reveal that the Bang Defendants have unlawfully exploited numerous additional sound recordings owned and/or controlled by Sony Music, in whole or in part, on TikTok, YouTube, Instagram, and Facebook, and potentially others.  Sony Music expressly reserves the right to amend this Complaint to assert additional claims for infringement of Sony Music's copyrighted works as it uncovers such infringement during the course of discovery.

**C.     The Bang Defendants Continue Infringing Sony Music's Copyrights Even After Sony Music Demands That They Stop**.

73.     In April 2021, Sony Music's counsel and Bang's counsel spoke on the telephone and exchanged correspondence about the Infringing Videos.  During an initial telephone call on April 6, 2021, Sony Music explained that owing to the absence of any license authorizing the Bang Defendants to use Sony Music's copyrighted musical works, the Bang Defendants would need to compensate Sony Music for the Bang Defendants' prior unauthorized uses and obtain licenses from Sony Music if it wanted to continue to use Sony Music's copyrighted musical works.

74.     Bang's infringement was clearly willful as the social media platforms on which Bang posted the Infringing Videos expressly provide that users have no right to infringe music, and particularly in connection with commercial activities.

75.     For example, TikTok's Intellectual Property Policy expressly states: "TikTok respects the intellectual property rights of others, and we expect you to do the same.  TikTok's Terms of Service and Community Guidelines *do not allow posting, sharing, or sending any content that violates or infringes someone else's copyrights*, trademarks or other intellectual property rights."[8]

---

[8] TɪᴋTᴏᴋ, *Intellectual Property Policy,* https://www.tiktok.com/legal/copyright-policy?lang=en
 (last accessed July 22, 2021) (emphasis added).

76.     In fact, TikTok's Terms of Service unmistakably provide, in all caps:

"NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSICAL WORKS EMBODIED THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE."[9]

77.     Similarly, Instagram's Terms of Use[10] incorporate Music Guidelines found on Facebook's website[11] which specifically prohibit use of music without an appropriate license. The Music Guidelines state in pertinent part:

"Use of music for commercial or non-personal purposes in particular is prohibited unless you have obtained appropriate licenses."

78.     The Bang Defendants are well aware that their conduct constitutes copyright infringement.  Bang is a sophisticated entity.  The Bang Defendants expend substantial resources to create and develop Bang's intellectual property, including its social media content.  Indeed, on Bang's own website the Terms and Conditions evidence Bang's knowledge and understanding of the value of intellectual property rights and its own intention to protect those right as they provide in pertinent part:

You should assume that all materials, content, designs, text, and images (collectively, the "Materials") contained in the Site are either the copyrighted property of VPX or its affiliates or are the copyrighted property of third parties. VPX neither represents nor warrants that your use of the Materials will not infringe the rights of third parties not owned by or affiliated with VPX.

You may download one (1) single hard copy of Materials displayed on the Site for non-commercial, personal use only, provided, however, you do not delete or modify the copyright, trademark, and other proprietary notices contained on the Materials. You may

---

[9] TIKTOK, *Terms of Service,* https://www.tiktok.com/legal/terms-of-service?lang=en (last accessed July 22, 2021) (emphasis in original).

[10] INSTAGRAM, *Terms of Use,* https://help.instagram.com/581066165581870 (last accessed July 22, 2021).

[11] FACEBOOK, *Music Guidelines,* https://www.facebook.com/legal/music_guidelines (last accessed July 22, 2021).

not modify, alter or change any Materials or distribute, publish, transmit, reuse, re-post or use the content of the Site for public or commercial purposes, including, without limitation, the text, images, audio and video.

***Unauthorized use of the Materials is strictly prohibited and is a violation of the rights of VPX, its affiliates, and/or third parties, including, without limitation, under copyright laws, trademark laws, the laws of privacy and publicity.***[12]

79.     Bang has also filed an action in this Court to protect its own intellectual property rights. *See Vital Pharmaceuticals, Inc. d/b/a VPX Sports v. Monster Energy*, Case No. 0:19-cv-60809-RKA (S.D. Fla. 2019).

80.     The Bang Defendants are well aware that Bang's, and its influencers', use of Sony Music sound recordings require a license.  In fact, Bang had sought a quote for a license from Sony Music in connection with the inclusion of Sony Music's sound recordings in a music library component of a new app it intended to launch.  Nevertheless, the Bang Defendants continue to use Sony Music's sound recordings without a license.

81.     The Bang Defendants have infringed Sony Music's right to the exclusive use of its sound recordings.

82.     The Bang Defendants have also engaged in secondary infringement, by knowing and benefitting from the infringements by influencers, and inducing and contributing to the infringements while in a position to control the same.

83.     Specifically, the Bang Defendants partnered with influencers who create Infringing Videos and post them on their own social media accounts, provide the Infringing Videos to Bang and Owoc who in turn repost the Infringing Videos on their respective social media accounts.

---

[12] Bang Energy, *Terms and Conditions*, https://bangenergy.com/terms-conditions/ (last visited August 3, 2021) (emphasis added).

84.     For example, Figure 8 below is posted to Owoc's TikTok account @bangenergy.ceo. Figure 8 is a screen capture of an Infringing Video featuring Doja Cat's "Like That" and an individual dancing with a Bang Energy drink in hand.  This video has been online since April 13, 2020 and remains there despite Sony Music informing the Bang Defendants of the infringement.



**<u>Figure 8</u>**

85.     The Bang Defendants' infringements rob Sony Music of the revenues it is entitled to for use of its sound recordings and deprives its artists of an important source of revenue.

86.     The Bang Defendants caused Sony Music irreparable harm, and damages in an amount to be determined at trial.

87.     The Bang Defendants knew the Infringing Videos prominently utilized sound recordings, and knew their uses were without a license from Sony Music.

88.     The Bang Defendants are well aware that they must obtain a license and authorization from Sony Music to reproduce, transmit, publicly perform, make derivative works of,

or otherwise use Sony Music's copyrighted recordings.

89.     Moreover, Sony Music expressly notified the Bang Defendants of their infringement no later than April 2021.  Nevertheless, the Bang Defendants have continued to include infringing content in their videos and to make the Infringing Videos available to the public.  The Bang Defendants' infringement therefore is knowing, intentional, and willful.

## COUNT I
## COPYRIGHT INFRINGEMENT
### (Against All Defendants)

90.     Sony Music incorporates by reference the allegations contained in paragraphs 1 through 88 of this Complaint.

91.     By the acts set forth above, Owoc and Bang have infringed Sony Music's copyrights in the Recordings, including by reproducing, distributing, adapting, and publicly performing by way of digital transmission the Recordings without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

92.     Each such infringement by the Bang Defendants of the Recordings constitutes a separate and distinct act of infringement.

93.     The Bang Defendants' acts of infringement are willful, in disregard of and with indifference to the rights of Sony Music.

94.     As a direct and proximate result of the infringements by the Bang Defendants, Sony Music is entitled to damages and to the Bang Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Sony Music is entitled to statutory damages for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. § 504(c).

95.     Sony Music further is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

96.     As a result of the Bang Defendants' conduct, Sony Music has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  Sony Music is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, the Bang Defendants will continue to infringe Sony Music's rights in the Recordings.  Sony Music is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin the Bang Defendants' continuing infringing conduct.

## COUNT II
## CONTRIBUTORY/VICARIOUS COPYRIGHT INFRINGEMENT
### (Against All Defendants)

97.     Sony Music incorporates by reference the allegations contained in paragraphs 1 through 88, as well as 91 through 95, of this Complaint.

98.     Third-party influencers have produced, posted and streamed the Infringing Videos on their own personal social media accounts (the "Influencer Videos").  In doing so, the influencers have infringed Sony Music's copyrights in the Recordings by reproducing, adapting, distributing, and publicly performing the Recordings without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

99.     The Bang Defendants knew about the Influencer Videos.  The Bang Defendants intentionally induced and/or materially contributed to the Influencer Videos.  The Bang Defendants have, on information and belief, provided creative direction to the influencers, produced the Influencer Videos or allowed the influencers to draw upon the skills and resources of Bang's in-house production team.  The Bang Defendants also possessed the right and ability to supervise the Influencer Videos as well as a direct financial interest in the Influencer Videos.  As a result, the Bang Defendants are liable for contributory and/or vicarious copyright infringement for the Influencer Videos.

100.    Each Influencer Video constitutes a separate and distinct act of infringement.

101.    The acts of infringement are willful, in disregard of and with indifference to the rights of Sony Music.

102.    As a direct and proximate result of the Influencer Videos, Sony Music is entitled to damages and to the Bang Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, Sony Music is entitled to maximum statutory damages for each Influencer Video, or in such other amount as may be proper under 17 U.S.C. § 504(c).

103.    Sony Music is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

104.    As a result of the Influencer Videos, Sony Music has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Sony Music is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Sony Music's rights in the Recordings will continue to be infringed.  Sony Music is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin the Bang Defendants' continuing infringing conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Sony Music respectfully requests that the Court enter a judgment in its favor and against the Bang Defendants:

a.    For a preliminary and permanent injunction enjoining and restraining the Bang Defendants and their respective agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliated companies, successors, assigns, and those acting in concert with them or at their direction from directly or indirectly infringing in any manner any right in any and all copyrighted works (or portions thereof), whether now in existence or later created, in

which any Plaintiff (including its parents, subsidiaries, affiliates, or distributed labels) owns or controls an exclusive right under Section 106 of the United States Copyright Act (17 U.S.C. § 106) or state law, including without limitation by directly or indirectly copying, reproducing, downloading, distributing, communicating to the public, uploading, linking to, transmitting, publicly performing, or otherwise exploiting in any manner any of Plaintiffs' Recordings, including but not limited to those set forth in Exhibit 1 to the Complaint;

      b.      For the Bang Defendants' profits and damages in such amount as may be determined; alternatively, for maximum statutory damages in the amount of $150,000 with respect to each copyrighted work infringed, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c);

      c.      For Sony Music's reasonable attorneys' fees and costs;

      d.      For prejudgment interest according to law; and

      e.      For such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated:  August 3, 2021

Respectfully submitted,

**PRYOR CASHMAN LLP**
*Attorneys for Plaintiffs*
201 South Biscayne Boulevard, Suite 2700
Miami, Florida 33131
Telephone: (786) 582-3011
Facsimile:  (786) 582-3004

*s/ James G. Sammataro*
James G. Sammataro
Florida Bar No. 520292
David C. Rose
(*Pro hac vice* application forthcoming)
Brendan S. Everman
Florida Bar No. 68702
jsammataro@pryorcashman.com
beverman@pryorcashman.com
ksuarez@pryorcashman.com