UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-CV-22825-DIMITROULEAS/BECERRA

SONY MUSIC ENTERTAINMENT; SONY
MUSIC ENTERTAINMENT US LATIN
LLC; ZOMBA RECORDING LLC; ARISTA
MUSIC; ARISTA RECORDS LLC;
LAFACE RECORDS LLC; RECORDS
LABEL, LLC; VOLCANO
ENTERTAINMENT III LLC,

    Plaintiffs,

  v.

VITAL PHARMACEUTICALS, INC. *d/b/a*
BANG ENERGY AND JACK OWOC, AN
INDIVIDUAL

    Defendants.
_____/

## PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS

Pursuant to Federal Rule of Civil Procedure 37 and the Court's inherent power, Plaintiffs respectfully move the Court for adverse inferences against defendants Vital Pharmaceuticals, Inc. *d/b/a* Bang Energy ("Bang") and Jack Owoc (collectively "Defendants"), for an award of the attorneys' fees and costs Plaintiffs incur in bringing this motion, and for such other relief as the Court deems proper owing to the spoliation of critical evidence in this action.

### INTRODUCTION

Plaintiffs respectfully submit that the Court should sanction Defendants for failing to preserve and for destroying critical evidence, and knowingly concealing their spoliation from both Plaintiffs and the Court for months.

Prior to the commencement of this action, Plaintiffs specifically identified 252 videos posted by Defendants and their influencers on social media platforms that infringed Plaintiffs' copyrighted music, expressly demanding that Defendants preserve all evidence related to the unlicensed use of that music. After commencing this action, Plaintiffs requested in discovery that Defendants produce all videos they and their influencers posted to social media. Rather than preserving and producing the requested videos, Defendants apparently destroyed hundreds of them, including approximately two-thirds of the videos identified by Plaintiffs. Although Defendants knew they failed to preserve the videos and that they had been lost or destroyed, Defendants misled Plaintiffs into believing that the videos would be produced, violated multiple court orders compelling Defendants to produce the videos at issue in this action, and then, only when left with literally no alternative but to defy this Court's insistence on production of the videos, admitted that 171 videos were lost.

Plaintiffs have been severely prejudiced by Defendants' spoliation. As an initial matter, Plaintiffs wasted almost three and a half months meeting and conferring about videos that Defendants knew or should have known they no longer had. More importantly, the videos are direct evidence of Defendants' infringement and, if properly preserved, would have revealed the "reach" of the videos on social media (*i.e.*, the number of views, likes, and comments by other social media users). This evidence is directly relevant to both liability and damages.

Under the settled law of this Circuit, Defendants' misconduct warrants sanctions, including the imposition of an adverse inference that: (i) for each video identified by Plaintiffs that cannot now be located because that video was not properly preserved, the video is deemed to have embodied the copyrighted sound recording as alleged; and (ii) the videos that were not preserved

were viewed as many times and had as much social media engagement and reach as the most popular videos posted by Defendants or their influencers on social media.[1]

## BACKGROUND

A. **Defendants Infringed Plaintiffs' Copyrighted Musical Works**.

Plaintiffs seek to hold Defendants accountable for their extensive unauthorized commercial use and infringement of Plaintiffs' famous copyrighted musical works on social media.

On April 13, 2021, Plaintiffs sent Bang an email regarding its unauthorized use of Plaintiffs' sound recordings that, among other things, expressly demanded that "Bang Energy . . . preserve[] all documents and materials related to the unlicensed use of commercial music" and attached exhibits listing 252 that infringed Plaintiffs' sound recordings videos. (Rose Decl. at ¶14 & Ex. 1). The parties then entered into a tolling agreement so that they could explore whether Defendants' infringement could be resolved short of litigation. (*Id*. at ¶15).

When Plaintiffs commenced this action on August 4, 2021, their Complaint annexed an exhibit listing more than 209 infringing social media videos that Plaintiffs had compiled. (D.E. 1, Ex. 1).[2] On January 31, 2022, Plaintiffs amended their Complaint and attached an exhibit to the First Amended Complaint listing 261 infringing social media videos. (D.E. 29, Ex. 1). Plaintiffs made clear in their pleadings that the lists of videos they provided were "illustrative, non-

---

[1] For the sake of clarity, Plaintiffs are not seeking adverse inference (i) with respect to those videos that they were able to locate, but only with respect to the videos that either they could not locate or could not completely download, and that Defendants cannot now produce. A list of the videos for which Plaintiffs seek adverse inference (i) is annexed as Exhibit 7 to the Declaration of David Rose executed on June 7, 2022 ("Rose Decl."). However, adverse inference (ii) is required even for videos that Plaintiffs could locate because the download process does not allow Plaintiffs (as opposed the Defendants as the posters or re-posters of videos) to obtain information concerning the respective videos' social media "reach."

[2] The reduction in the number of videos from 252 in Plaintiffs' April 13, 2021 letter to 209 in their Complaint resulted from the fact that applications for copyright registration were still pending for a number of the sound recordings addressed in the April 2021 letter.

exhaustive examples of known infringements" and that "[d]iscovery is likely to reveal that the Bang Defendants have unlawfully exploited numerous additional sound recordings owned and/or controlled by Sony Music, in whole or in part, on TikTok, YouTube, Instagram, and Facebook, and potentially others." (D.E. 1, at ¶¶ 71-72; D.E. 29, at ¶¶ 73-74).

**B.     Defendants Failed to Produce the Videos and Have Admitted to Spoliation**.

On December 15, 2021, Plaintiffs served Defendants with document requests. (Rose Decl., ¶6). Although Defendants consistently assured Plaintiffs that they were reviewing documents for production, it ultimately (and unfortunately) became clear that they were not going to comply with their discovery obligations, including the production of videos in response to Requests for Production Nos. 13 and 54. (*Id.*, ¶8).

On May 2, 2022, Plaintiffs – in accordance with Magistrate Judge Becerra's rules – submitted a notice of discovery hearing to address, in part, the parties' dispute over the scope of documents to be produced in response to Document Requests Nos. 13 and 54. (D.E. 38). Following the hearing, which was held on May 3, 2022, Magistrate Judge Becerra ordered Defendants to produce the videos identified in the First Amended Complaint within 7 days of the hearing (*i.e.*, by May 10, 2022). (D.E. 40). On May 10, 2022, Plaintiffs filed a second notice of discovery hearing for a hearing the Court had set for May 10, 2022, in which Plaintiffs indicated that they were still "waiting for the production of:…[a]ll pertinent videos responsive to Requests Nos. 13 and 54 pursuant to this Court's Order. (D.E. 40)." (D.E. 41). The Court then ordered that Defendants produce "[a]ll videos responsive to Request Nos. 13 and 54" by 6:00 P.M. on May 10, 2022. (D.E. 43). Defendants completely flouted the Court's production Order, which resulted in the Court issuing the following further Order:

> Defendants failed to produce all videos listed in the First Amended Complaint that are responsive to Request Nos. 13 and 54. Plaintiffs' Motion to Compel is

> hereby **GRANTED**. Defendants are **ORDERED** to produce all 261 videos, in downloaded form and on a rolling basis, to be complete by **Sunday, May 12, 2022 at 12:00 p.m.** Within **7 days** of that production, Plaintiffs shall identify the 25 videos for which Plaintiffs permit Defendants to re-upload and the timeframe for which Plaintiffs permit those 25 videos to remain uploaded. Plaintiffs shall then record those 25 videos via Plaintiffs' preferred manner. Plaintiffs are entitled to costs for the recording or otherwise documenting of those videos by Plaintiffs. Plaintiffs' Motion for Sanctions under Rule 37 as to this late production is also hereby **GRANTED**. Plaintiffs are entitled to recover attorneys' fees and costs not only in connection with Plaintiffs' counsel's attendance at today's hearing, as well as any additional time expended by counsel with respect to efforts to obtain production of the videos responsive to Request Nos. 13 and 54…

(D.E. 46).

However, during his deposition on May 12, 2022, Bang's Chief IP counsel, Gideon Eckhouse, testified that it was his understanding that Defendants could not find an indeterminate number of the videos at issue in this action. (Rose Decl., ¶16, Ex. 2 at 97:6-101:12). Then, on May 15, 2022, Defendants served a declaration by Mr. Eckhouse in which he admitted that most of the videos at issue had actually been "deleted" and were "no longer accessible" to Bang. (Rose Decl., Ex. 3, at ¶¶6-7). Indeed, "a total of 171 accused social media posts from Plaintiffs' Exhibit 1 [to the First Amended Complaint] are no longer in the custody, control, or possession of Bang Energy" (the "Lost Videos"). (*Id.*, at ¶10).

Mr. Eckhouse also stated in his declaration that Bang took down "no less [sic] than 215 accused social media posts" in "the Summer and Fall of 2021." (*Id.*, at ¶4).[3] And, despite having an obligation to preserve the videos, Mr. Eckhouse admitted that for videos posted as Facebook videos and Instagram "reels," "deletion of such accused posts from the platform was incidental to

---

[3] Notably, Defendants have recently advised Plaintiffs that they did not record or track the date on which they took down the videos at issue. (Rose Decl. at ¶18.) Those dates are, however, important to establishing how long the videos were up, Defendants' willfulness and the extent of Plaintiffs' damages. It is a further example of Defendants' disregard for legal obligations, their disregard for others' rights, and their lack of diligence.

taking them down." (*Id.*, at ¶6). Additionally, Mr. Eckhouse stated that Bang took down some of the accused videos by "converting them to 'private mode'" on a social media platform, but inexplicably, "a portion of them are no longer accessible even to Bang Energy." (*Id.*, at ¶¶5,7).[4] Mr. Eckhouse further stated that some of the Lost Videos could possibly be saved within the application Dropbox, however, he professed that searching for them would be too difficult to undertake, more than implying that no effort had been made, would be made or could be made to perform such a search. (*Id.*, at ¶11).[5]

After reviewing Mr. Eckhouse's May 15, 2022 Declaration during the May 24, 2022 discovery hearing, the Court observed that Defendants had represented to the Court "on multiple occasions" that they actually had the Lost Videos. (*See* Rose Decl., Ex. 5 at 47:2-10; 47:23-48:6). Indeed, Defendants represented to the Court, during the May 10, 2022 discovery hearing, that "their team [was] working diligently to produce the [Lost Videos] by the end of the day (May 10, 2022), as the Court previously ordered." (*See* Rose Decl., Ex. 6 at 21:24-22:25). When the Court learned that Defendants only discovered they were missing the Lost Videos on May 13, 2022 or May 14, 2022, the Court asked: "So nobody bothered to start looking for a video until after the last order?" (Rose Decl., Ex. 5 at 48:12-25). The Court then asked Defendants: "How is that not bad faith? How is that not sanctionable conduct?" (*Id.* at 49:1-2). Indeed, the Court later stated that it

---

[4] During his deposition in a parallel case, *UMG Recordings, Inc. et al. v. Vital Pharmaceuticals, Inc. d/b/a Bang Energy et al.*, Case No. 21-cv- 60914 (S.D. Fla.) (the "UMG Matter"), Bang's former legal support manager, Alex Rodriguez, testified that he was involved in the process of preserving videos and that "some" videos were not preserved. (Rose Decl., Ex. 4 at 21:25-22:2.) Mr. Rodriguez testified that he did not recall which videos were lost and refused to provide additional details about the preservation process under the guise of a privilege objection. (*Id*. at 22:3-23:18). Defendants knowingly concealed their failure to preserve videos for months.

[5] What Mr. Eckhouse is saying is that the Lost Videos are lost for all actual and practical purposes.

"wasn't expecting…[Plaintiffs] to tell [it] that those videos aren't there now…this is absurd." (*Id.* at 67:9-13).

In short, despite Plaintiffs' requests, and Defendants' manifest obligation, to preserve the Lost Videos as early as April 2021, Defendants failed to do so, and instead strung Plaintiffs along during months of discovery – then flouted this Court's orders – only to admit at the eleventh hour that they had failed to preserve the Lost Videos. Ultimately, approximately two-thirds of the infringing videos at issue in this case were not preserved.

## ARGUMENT

A.  **Legal Standard for Imposing Spoliation Sanctions**.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Hyundai Motor Am. Corp. v. N. Am. Auto. Servs., Inc.*, No. 20-82102-CIV, 2021 WL 3111191, at *5 (S.D. Fla. July 22, 2021) (quoting *Gaff v. Baja Marine Corp.*, 310 F. App'x 298, 301) (11th Cir. 2009)). Federal law governs the imposition of spoliation sanctions, but the Court's opinion may be informed by state law, provided that it is consistent with federal law. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005).

To establish spoliation, a party must demonstrate: (1) that the missing evidence once existed; (2) that the alleged spoliator had a duty to preserve the evidence; (3) that the evidence was crucial to the movant be able to prove its *prima facie* case or defense; and (4) the alleged spoliator acted in bad faith. *Id.* at *6. Importantly, "courts in this district interpret 'bad faith' in the spoliation context to not require a showing of malice or ill-will, but rather conduct evidencing more than mere negligence." *Id.* at *9; *see also Penick v. Harbor Freight Tools, USA, Inc.*, 481

F. Supp. 3d 1286, 1293 (S.D. Fla. 2020) ("bad faith is deemed to exist in either a case of intentional misconduct or reckless disregard of the consequences").

**B.      Spoliation Sanctions Are Warranted**.

    **1.      The Lost Videos Once Existed**.

On April 13, 2021, Plaintiffs identified 252 infringing videos to Defendants that Plaintiffs' demanded be preserved. (*See, e.g.*, Rose Decl., Ex. 1). Additionally, Plaintiffs provided updated lists of infringing videos they discovered, culminating in the list annexed to their First Amended Complaint in January 2022. (D.E. 29-1) Defendants admittedly "removed" at least 215 of the videos identified by Plaintiffs or purportedly set them to "private", and cannot locate 171 of the videos at issue in this action. (Rose Decl., Ex. 3 at ¶¶ 4, 10).

    **2.      Defendants Had a Duty to Preserve the Lost Videos**.

"A party has an obligation to retain relevant documents, including emails, when litigation is reasonably anticipated." *Penick*, 481 F. Supp. 3d at 1293 (citation omitted) (collecting cases); *Optowave Co. v. Nikitin*, No. 6:05-cv-1083-Orl-22DAB, 2006 WL 3231422, at *7 (M.D. Fla. Nov. 7, 2006) ("Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation…and destroys such documents and information. [A litigant] is under a duty to preserve what it knows, or reasonably should know, is relevant in the action…").

Here, Defendants knew they had a duty to preserve the Lost Videos when Plaintiffs expressly demanded that they do so on April 13, 2021. (Rose Decl., Ex. 1). Thus, based on SME's April 13, 2021 demand, there is no question that litigation was reasonably anticipated as of that date and that Defendants' duty to preserve videos containing commercial music was triggered as

of that date (at the latest).⁶  Further, Defendants removed videos from social media after this lawsuit was filed.  (*Id.,* Ex. 3 at ¶ 4 (admission by Mr. Eckhouse that Defendants removed infringing videos in the "Summer and Fall of 2021")).  Because litigation had been commenced by August 4, 2021, Defendants unquestionably had a duty to preserve the videos they removed at that time.

        **3.**        **The Lost Videos Are Crucial to Plaintiffs' Case**.

The Lost Videos are critical to Plaintiffs' ability to prove their case.  Specifically, the Lost Videos would allow Plaintiffs to demonstrate known and additional infringements to the Court, and to determine the number of views received by and extent of engagement regarding each infringing video.  Defendants' failure to preserve the Lost Videos has deprived Plaintiffs of that crucial evidence.  *See Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *9 (holding that where plaintiff alleged conspiracy to defraud plaintiff by intentionally damaging engines, the returned engines were crucial evidence); *Penick*, 481 F. Supp. 3d at 1294 (holding generator plaintiff alleged to have malfunctioned was "material to the proof or defense of a claim at issue in this case"); *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 302 (11th Cir. 2009) (portion of boat that had fractured was "*the* critical piece of evidence in this case" as it would support either plaintiff or defendant's arguments as to whether a manufacturing defect had caused the accident at issue).  Notably, the Court can take judicial notice that in the UMG Matter, Defendants have cynically moved for summary judgment on the grounds that the plaintiffs in that case cannot establish that their content was used by the Defendants because the videos at issue no longer exist; Defendants can be expected to employ the same tactic here absent the adverse inference requested. (UMG Matter D.E. 60).

---

⁶ Moreover, shortly thereafter, the parties entered into a tolling agreement effective as of April 13, 2021 while they discussed a possible settlement.  (*Id.*)

4.     **Defendants Destroyed the Lost Videos in Bad Faith**.

As noted above, in the Eleventh Circuit bad faith does not require intentional destruction of evidence.  *Penick*, 481 F. Supp. 3d at 1293.  Rather, "bad faith is deemed to exist in either a case of intentional misconduct *or reckless disregard of the consequences*."  *Id*.  Indeed, the moving party may establish bad faith through circumstantial evidence if four factors are present:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue; (2) the spoliating party took an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

*Hyundai Motor Am. Corp*., 2021 WL 3111191, at *7-8 (citing *Penick*, 481 F. Supp. 3d at 1292).  Here, all four factors are satisfied.

a.    **Evidence Once Existed That Was Material to Plaintiffs' Claims**.

As explained above, the Lost Videos are critical evidence for both liability and damages.  Accordingly, under the circumstances presented here, this factor is established.  *See Hyundai Motor Am. Corp*.,2021 WL 3111191, at *10 (finding this factor met where plaintiff intentionally destroyed critical evidence "at the heart of the[] allegations . . . which Defendants sought to examine and inspect but were prevented from doing so by Plaintiff's disposal").

b.    **Defendants Took an Affirmative Act Causing the Videos To Be Lost**.

It is indisputable that Defendants took an affirmative act that caused the videos to be lost.  Specifically, Defendants admittedly removed the videos from their publicly available social media accounts and failed to preserve them.  (Rose Decl., Ex. 3 at  ¶¶ 4-9 (admitting that Defendants "took down" hundreds of videos, that only some videos were preserved, and that some videos were deleted); *id.*, Ex. 4 at 21:25-22:2 ("Q: Were there any videos that were not preserved?  A: Yes, sir.")).  Thus, Defendants are culpable for the loss of the Lost Videos.

### c. The Defendants Knew or Should Have Known They Had a Duty To Preserve the Lost Videos.

As detailed above, at the time Defendants spoliated the Lost Videos, Plaintiffs had already: (i) made a pre-suit preservation demand in April 2021; (ii) had entered into a tolling agreement with Defendants; or (iii) commenced litigation. Under well-settled law, Defendants knew or should have known they had a duty to preserve the videos. *See Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *10 (finding that the second and third elements are satisfied because Defendants "allowed" the evidence to be destroyed "by not taking reasonable steps" to ensure their preservation "at a time when [they were] under a clear duty to preserve").

### d. Defendants' Conduct Cannot Credibly Be Explained Except as Bad Faith.

Defendants have provided no explanation for the failure to preserve the Lost Videos, let alone a reasonable one. Bang's in-house counsel admitted that Bang: (i) did not preserve all videos; (ii) presently knows that at least 171 videos were lost or deleted; and (iii) refuses to search a Dropbox folder that may, but that may not, contain Lost Videos. (Rose Decl., Ex. 3 at ¶¶ 4-5, 7-9). Defendants' deletion of videos, with no explanation whatsoever, is sufficient to establish bad faith because it was reckless even when viewed in the best light. *See Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *11 (finding bad faith where defendants "fail[ed] to offer an excuse that places culpability on anyone other than [Defendants] or otherwise sets forth any explanation, let alone a valid one, for the loss of the [evidence]"); *Penick*, 481 F. Supp. at 1294 (finding bad faith where plaintiff "fails to offer an excuse that in any way places fault on anyone else or which otherwise sets forth a valid reason to destroy the generator").

Accordingly, spoliation sanctions are warranted.

### C.  An Adverse Inference Is the Appropriate Remedy.

"A district court has 'broad discretion' to impose spoliation sanctions, which derives 'from

the court's inherent power to manage its own affairs' and 'achieve the orderly and expeditious disposition of cases.'" *Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *5 (quoting *Flury*, 427 F.3d at 944). "[S]poliation sanctions may include: (1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation which raises a presumption against the spoliator." *Id.* (quoting *Flury*, 427 F.3d at 945). In determining the appropriate sanction for spoliation, courts consider (1) the bad faith of the spoliator; (2) the degree of prejudice sustained by the moving party; and (3) what is required to cure the prejudice. *Schultze v. 2K Clevelander, LLC*, No. 17-cv-22684, 2018 WL 4859071, at *7 (S.D. Fla. Oct. 4, 2018) (granting adverse inference that destroyed evidence would have been favorable to plaintiff).

Here, Defendants acted recklessly, if not intentionally, with the knowledge that failure to preserve social media video posts would materially harm Plaintiffs' case. *See Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *11 ("[T]he circumstances infer an awareness by [the plaintiff] that the non-preserved 144 engines would likely not help its case, leading [the plaintiff] to perhaps be deliberately ignorant of whether the engines were, in fact, being preserved as required.").

Further, Defendants' conduct has in fact severely prejudiced Plaintiffs. The Lost Videos are direct evidence of Defendants' infringement and would have shown, among other things, the number of times each video was viewed and its social media "reach," which are important factors in determining damages.

Courts routinely impose an adverse inference as a curative sanction where, as here, a party has spoliated unfavorable evidence. *See Austrum v. Fed. Cleaning Contrs., Inc.*, 149 F. Supp. 3d 1343, 1349 (S.D. Fla. Ja. 8, 2016; *Graff*, 310 F. App'x at 302; *Penick*, 481 F. Supp. 3d at 1295; *Hyundai Motor Am. Corp.*, 2021 WL 3111191, at *14; *Optowave Co.*, 2006 WL 3231422, at *12. The adverse inferences sought by Plaintiffs through this motion will obviate and cure the above

referenced prejudice to Plaintiffs that Defendants' spoliation has caused.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion in its entirety and issue an Order: (i) imposing an adverse inference that for each video identified by Plaintiffs that cannot now be located because that video was not properly preserved, the video is deemed to have embodied the copyrighted sound recording as alleged; (ii) imposing an adverse inference that the Lost Videos were viewed as many times and had as much social media engagement and reach as the most popular videos posted by Defendants or their influencers on social media; (iii) awarding Plaintiffs the attorneys' fees and costs they incurred in bringing this motion; and (iv) granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated:  June 7, 2022                                          Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (786) 582-3010
Facsimile:  (786) 582-3004

 s/  *James G. Sammataro*
 James G. Sammataro
 Florida Bar No. 520292
 Brendan S. Everman
 Florida Bar No. 68702
 David C. Rose
 (admitted *pro hac vice*)
 jsammataro@pryorcashman.com
 beverman@pryorcashman.com
 drose@pryorcashman.com
 ksuarez@pryorcashman.com

 *Attorneys for Plaintiffs*