UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1-21-cv-22825- WPD

SONY MUSIC ENTERTAINMENT; SONY
MUSIC ENTERTAINMENT US LATIN LLC;
ZOMBA RECORDING LLC; ARISTA
MUSIC; ARISTA RECORDS LLC; LAFACE
RECORDS LLC; RECORDS LABEL, LLC;
VOLCANO ENTERTAINMENT III LLC,

                Plaintiffs,

v.

Vital Pharmaceuticals, Inc. *d/b/a* Bang Energy;
and Jack Owoc, an individual,

                Defendants.

_____

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Defendants Vital Pharmaceuticals, Inc. d/b/a Bang Energy and Jack Owoc ("Bang"), by and through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby move for final summary judgment on each of Plaintiffs' claims and state:

**INTRODUCTION**

Plaintiffs allege that Bang unlawfully and willfully used portions of copyrighted songs in content posted to online platforms TikTok, Instagram, YouTube and Facebook apps.  But Plaintiffs have failed to identify any actual damages it suffered as a result of Bang's alleged infringement. Moreover, Plaintiffs have not proffered any evidence to support a causal relationship between the alleged infringement and any profits generated by Bang from that infringement.  Bang promotes its brand message to customers through multiple media channels, including trade shows and expos, and press coverage, as well as through social media and online marketing.  Bang's online presence

1

includes many social media channels, including YouTube, Facebook, Instagram, Twitter, and TikTok among other platforms, in addition to Bang's own website. Plaintiffs allege infringement by musical content included in 297 posts[1] (the "Accused Videos") on select platforms, which represents a drop in the bucket of Bang's marketing campaign including thousands of posts across various platforms. Plaintiffs do not have an expert witness, or any witness, who can identify the nexus between those 297 posts and any specific profits generated by Bang. Without nexus, Plaintiffs cannot make a prima facie case of copyright infringement. Accordingly, summary judgment is appropriate.

Plaintiffs' case is also replete with fatal evidentiary flaws: from missing evidence permitting the legally-required comparison of any copyrighted song to any infringed work, to the lack of evidence that Plaintiffs even own all of the copyrights they assert in this case. Each of these failures independently entitles Bang to partial summary judgment on those videos with insufficient evidence.

## BACKGROUND

**A. Bang Energy**

Founded in 1993, Vital Pharmaceuticals manufactures and sells the popular Bang Energy drink. (MF1.[2]) Jack Owoc owns Vital Pharmaceuticals. (MF2.) Bang Energy products are drinks created to positively impact the lives of its consumers, and contains no sugar, no carbs, and caffeine. (MF3) Health-conscious individuals like fitness enthusiasts, college students, and others with active lifestyles looking for a great taste, nutraceutical ingredients, and boost of energy have

---

[1] As discussed below, 10 entries in Plaintiffs' list of 307 Accused Videos contain a duplicate URL and no other information that could be used to identify the purportedly accused video – leading Bang to conclude that these videos are indeed duplicate entries and can be disregarded, putting only 297 Accused Videos at issue.
[2] All references to "MF" refer to the corresponding Material Fact in Defendants' concurrently filed Statement of Material Facts.

flocked to Bang's products. *Id.* Bang offers unique beverage flavors and products to match consumers' ever-changing desires. (MF4.) Bang Energy drinks are known for providing consumers with a wide variety of fun and refreshing flavors including Cotton Candy, Peach Mango, Purple Guava Pear, Blue Razz, Lemon Drop, Sour Heads, Root Bear Blaze, Black Cherry Vanilla, Champagne, Cherry Blade Lemonade, Citrus Twist, Power Punch, Star Blast, Rainbow Unicorn, Sweet Tea, and Bangster Berry. *Id.*

Bang is currently sold nation-wide through retail grocery and specialty chains, wholesalers, club stores, mass merchandisers, convenience stores, and foodservice customers. (MF5.) Bang is sold in all 50 states and 37 countries worldwide in both the convenience sector and in the supermarket sector. (MF6.) Bang is also sold on Bang's website, Bang's Amazon.com storefront, and through brick-and-mortar stores. (MF7.) Since 2017, over 100 million units of Bang Energy drinks have been sold, generating over $1 billion gross revenue, making Bang Energy the third-largest selling energy drink in the United States. (MF8.)

Bang's success is backed by its marketing strategies that appeal to its consumers. (MF9.) Bang's marketing efforts include in-person interactions like marketing blitz in key markets, event sponsorships, and tournament and concert appearances. (MF10.) Bang markets extensively at in-person trade shows and product tasting events, and slowly built out what is now a nation-wide distribution network. (MF11.) Bang also utilizes the internet through various social media platforms, web campaigns, and influencers. (MF12.) Bang invested years of hard work and tens of millions of dollars in promotional expenses to build its brand into one of the top three energy drinks nationwide, behind only Monster and Red Bull. (MF13.)

Bang's profits are the result of many factors such as its sales programs, point of sale merchandisers, packaging unique flavors, ingredients, distribution, and marketing. (MF14.) Bang

has a number of key selling features including that Bang Energy is a healthy alternative to a high sugar energy drink because it has no sugar and no calories. (MF15). It also is sold in a number of different flavors that appeal to a wide audience. (MF16).

**B. Bang's Use of Social Media**

Bang markets its products through various social media platforms, web campaigns, and influencers. (MF17.) Bang makes regular posts on TikTok and Instagram, and thousands of posts across all online platforms. (MF18.) As of November 18, 2019, Bang had over 1 million followers on Instagram. (MF19.) Instagram launched "Reels" in 2020 to share videos similar in format to TikTok, and Bang began marketing on Reels at that time. (MF20.) Instagram allows its users to include music in videos posted on its platform, and also has its own built-in music library with popular songs that users can choose to include in their videos. (MF21.) When users create a video, they are given the option to select music from that built-in library without exiting the application or uploading their own music. (MF22.)

In 2020 Bang Energy expanded its social media marketing to include TikTok. (MF23.) TikTok is a social media site centered around short videos and contains a built-in music library of songs. (MF24.) At the time Bang first began posting on TikTok, TikTok videos were limited to a duration of 15 seconds. (MF25.) TikTok allows its users to include music in videos posted on its platform. (MF26.) TikTok has its own built-in music library with popular songs that users can choose to include in their videos. (MF27.) When users create a video, they are given the option to select music from that built-in library. (MF28.) Users do not have to exit the application or upload their own music. (MF29.)

At the time Bang Energy posted videos on TikTok, no warning was provided that the songs TikTok provided could not be used in videos posted by businesses, such as Bang. (MF30.) Bang

4

Energy used TikTok as it was intended, posting videos utilizing the music that TikTok provided. (MF31.)  During a videoconference between Bang and TikTok, a representative of TikTok informed Bang that it could use the music in TikTok's music libraries and, in fact, helped Bang create such a video.  (MF32.)

Bang has detailed written corporate policies, which it updates regularly, aimed at avoiding unauthorized use of the intellectual property of others.  (MF33.)  Bang has taken steps to ensure that no copyrighted material is used inappropriately.  (MF34.)

**C. Plaintiffs' Claims**

Plaintiffs' Exhibits 1 and 2 to their Amended Complaint list 307 videos in which Plaintiffs accuse Defendants of infringing Plaintiffs' copyrighted Sound Recordings ("SR") (the "Accused Videos").  (MF35.)  The fifth column in each of those lists has a heading "Post URL."  (MF36.) For most of the entries in the list a URL, or link, is provided.  *Id.*  However, for 10 entries in those lists, Plaintiffs provided a duplicate URL – leading Bang to conclude that these videos are simply duplicate entries and can be disregarded, putting only 297 Accused Videos at issue in this case. *Id.*  The majority of the Accused Videos – 179 Accused Videos – were posted on the TikTok platform.  (MF37).  Another 109 of the Accused Videos were posted on Instagram, while 7 were posted on Facebook and 2 on YouTube. (MF38 - 40).

Plaintiffs failed to provide any proof of copyright for songs in 7 of the Accused Videos. (MF41).  Additionally, Plaintiffs failed to produce 19 of the Accused Videos themselves, and failed to produce an additional 3 "original works" of the songs at issue as required for a "substantial similarity" inquiry.  (MF42 - 43).  For the Accused Videos that have been produced, Defendants' review indicates that 24 of the videos contain songs that do not correspond to the original work

that was produced by the Plaintiffs, as the songs in the Accused Videos are remixes or sung by an artist different than the artist in the original work that Plaintiffs produced. (MF44).

**D. Bang's Profits**



## APPLICABLE LEGAL STANDARDS

**A. Summary Judgement Standard**

"[I]t has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017); *see also, e.g., Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) ("When

6

QB\74850642.1

a moving party alleges that there is an absence of evidence necessary to prove a specific element of a case, the nonmoving party bears the burden of presenting evidence that provides a genuine issue for trial.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

"There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted); *see also Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir.1996) ("Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden.").

### B. Damages for Copyright Infringement Claims

Under the Copyright Act an infringer is liable for either: (1) the copyright owner's actual damages and any additional profits of the infringer, or (2) statutory damages. 17 U.S. C. § 504(a); *Cohen v. United States*, 100 Fed. Cl. 461, 476 (Fed. Cl. 2011). An award of actual damages "undertakes to compensate the [copyright] owner for any harm he suffered by reason of the infringer's illegal act. *On Davis v. The Gap, Inc.*, 245 F.3d 152, 159 (2d Cir. 2001). Assessing actual damages is a "case-by-case assessment of the factors involved, rather than application of hard and fast rules." *Cohen*, 100 Fed. Cl. at 476. To determine actual damages, courts customarily assess "the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement." *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 400 (9th Cir. 1988) (quoting *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.* (MGM), 772 F.2d 505, 512 (9th Cir. 1985)). The loss in market value of the copyrighted work is "often measured by the profits lost as a result of the infringement." *Cohen*, 100 Fed. Cl. at 477.

"The basic rule for computing injury to the market value of a copyrighted work arising from infringement is to inquire what revenue would have accrued to plaintiff but for the infringement." *Nimmer* § 14.02[A][1]; see *also Fitzgerald Publ'g Co. v. Baylor Publ'g Co*., 807 F.2d 1110, 1118 (2d Cir. 1986). Because injury to the market value of a copyrighted work can be difficult to ascertain, a variety of methods can be used to determine the extent of that injury. *Fitzgerald Publ'g Co*., 807 F.2d at 1118.

Regardless of the method used to determine actual damages, plaintiff always has the burden of proving causation. *Cohen*, 100 Fed. Cl. at 477; *see also Stevens Linen Assocs., Inc. v. Mastercraft Corp.*, 656 F. 2d 11, 15 (2d Cir. 1981).  The burden of proving that the infringement was the cause of its loss of revenue lies with the plaintiff.  *See Harper & Row, Publishers, Inc. v. Nation Enters*., 471 U.S. 539, 567 (1985); *see also Polar Bear Prods v. Timex Corp*., 384 F. 3d 700, 708 (9th Cir. 2004)(*citing Mackie v. Rieser*, 296 F.3d 909, 915 n.6, 916-17 (9th Cir. 2002)). "The Plaintiff should first establish that the infringement was the cause-in-fact of its loss by showing with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss." *Cohen*, 100 Fed. Cl. at 478.  Further, "the plaintiff must also prove that the infringement was a proximate cause of its loss by demonstrating that the existence and amount of the loss was a natural and probable consequence of the infringement." *Id*.

Even though plaintiff carries the burden to prove causation, "[c]ourts and commentators agree [the term 'actual damages'] should be broadly construed to favor victims of infringement." *On Davis*, 246 F. 3d at 164.  Thus, "uncertainty will not preclude recovery of actual damages if the uncertainty is as to amount, not as to whether actual damages are attributable to the infringement."  *Cohen*, 100 Fed. Cl. at 479; *see also Nimmer* § 14.02[A][3].

**C. Indirect Profits Under 17 U.S.C. § 504(b)**

To survive summary judgment, a copyright infringement plaintiff seeking to recover indirect profits damages under 17 U.S.C. § 504(b) must proffer some evidence to create a triable issue regarding whether the infringement at least partially caused the profits that the infringer generated as the result of the infringement. *Mackie v. Rieser*, 296 F. 3d 909, 911 (9th Cir. 2002). Section 504(b) of the Copyright Act provides as follows:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b); Mackie, 296 F.3d 909 (9th Cir. 2002).

On its face, § 504(b) does not differentiate between "direct profits" – those that are generated by selling an infringing product – and "indirect profits" – revenue that has a more attenuated nexus to the infringement. *Mackie*, 296 F.3d at 915. However, courts have held that a copyright holder must establish the existence of a causal link before indirect profits damages can be recovered.[3] *Mackie*, 296 F.3d at 915; *see also Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1279 (M.D. Fla. 2008); *see Home Design Servs. v. A-Plus Homes, Inc.*, 2004 U.S. Dist. LEXIS 29044, *14 (M.D. Fla. 2004); *see also Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399 (2d Cir. 1989) (holding that a plaintiff can recover indirect profits in the form of "value received from an infringing product used to enhance commercial reputation" if it first demonstrates

---

[3] "Although the Eleventh Circuit has never ruled on [the] issue, virtually every other Court of Appeals 'has required some nexus between the infringing activity and the gross revenue figure proffered by a plaintiff.'" *Watson v. K2 Design Grp., Inc.*, No. 15-CV-61020, 2016 WL 11783284, at *11 (S.D. Fla. Aug. 9, 2016) (quoting *Latimer v. Roaring Toyz, Inc.*, 2010 WL 3747148, at *5 (M.D. Fla. Sept. 21, 2010); *Ordonez-Dawes v. Turnkey Properties, Inc.*, 2008 WL 828124, at *3 (S.D. Fla. Mar. 27, 2008)).

that "the amount of an award is based on a factual basis rather than undue speculation"); *see also Estate of Vane v. The Fair, Inc*., 849 F.2d 186, 189-90 (5th Cir. 1988) (affirming district court's refusal to award indirect profits damages allegedly resulting from infringing use of photographic slides in advertising). Once a plaintiff has established which revenues are attributable to the defendants' infringing activity, the burden shifts to the defendants to present evidence demonstrating the amount of expenses to be counted against revenue.

Thus, to survive a motion for summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement. *Mackie*, 296 F. 3d 909, 915 - 16 (9th Cir. 2002).

## ARGUMENT

### A. Plaintiffs Must Come Forward With Evidence of Direct Infringement For Each Asserted Copyright, Including Evidence of Ownership, Evidence of the Accused Videos, and Evidence to Show "Substantial Similarity"

Plaintiffs allege that Bang has infringed their exclusive rights to reproduce, distribute, adapt and publicly perform the asserted copyrighted works. (ECF No. 29 ¶¶ 98, 105.) To survive summary judgment, Plaintiffs present specific evidence of direct infringement for each asserted copyright that they contend gives rise to a genuine issue of material fact regarding infringement. But Plaintiffs cannot prove direct infringement for a number of separate and independent reasons. Plaintiffs' case is riddled with fatal evidentiary flaws: Plaintiffs lack evidence of its ownership for certain of the asserted copyrights, lack evidence of certain Accused Videos, and lack evidence from which a comparison of the asserted works to certain Accused Videos can be made.

To prove copyright infringement, Plaintiffs must prove ownership of the asserted copyrights. *See, e.g., Bridgmon v. Array Sys. Corp*., 325 F.3d 572, 576 (5th Cir. 2003). Bang is

entitled to partial summary judgment because Plaintiffs cannot prove ownership of many of the copyrights asserted in their Complaint. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 n.10 (5th Cir. 2017) ("[A] movant may support a motion for summary judgment by pointing out that there is no evidence to support a *specific element* of the nonmovant's claim.") (emphasis in original).

As noted in *Peter Letterese and Associates v. World Institute of Scientology Enterprises*, 533 F.3d 1287, 1300 (11th Cir. 2008), a copyright plaintiff must come forward with evidence of both "actual copying" and "legal copying." An analysis of "legal copying" requires determining whether, as a mixed issue of fact and law, those elements of the [copyrighted work] that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable. *Peter Letterese,* 533 F.3d at 1300 (citing *MiTek Holdings, Inc. v. Arce Eng'g, Inc.,* 89 F.3d 1548, 1554 (11th Cir.1996) (citation omitted) and *BUC Int'l Corp. v. Int'l Yacht Council Ltd.,* 489 F.3d 1129, 1148 n. 40 (11th Cir.2007)). Thus, an analysis of "legal copying" requires a side-by-side comparison of the copyrighted work and the allegedly infringing work, so that the factfinder can assess whether they are "substantially similar." *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) ("[T]he law of this circuit prohibits finding copyright infringement without a side-by-side comparison of the works."); *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) ("To determine whether an instance of copying is *legally actionable*, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'") (emphasis in original).

Plaintiffs' Exhibits 1 and 2 to their Amended Complaint list 307 Accused Videos in which Plaintiffs accuse Defendants of infringing Plaintiffs' copyrighted SRs. (MF35.) The fifth column in each of those lists has a heading "Post URL." (MF36.) For most of the entries in the list a URL, or link, is provided. *Id.* However, for 10 entries in those lists, Plaintiffs provided a duplicate

URL and no other information that could be used to identify the purportedly accused video – leading Bang to conclude that these videos are indeed duplicate entries and can be disregarded, putting only 297 Accused Videos at issue. *Id.* Plaintiffs have provided no evidence of copyright ownership for the songs used in 7 of the Accused Videos. (MF41.) Bang is therefore entitled to partial summary judgment dismissing Plaintiffs' claim of infringement of the copyrights corresponding to these Accused Videos as Plaintiffs have come forward with no evidence that they own the asserted copyrights. *Id.*

Additionally, Plaintiffs failed to produce 19 of the Accused Videos themselves, and failed to produce an additional 3 "original works" of the songs at issue as required for a "substantial similarity" inquiry. (MF342-43.) This failure to provide complete evidence in this case does not permit the factfinder to conduct a "substantial similarity" comparison between (1) the Accused Videos and (2) a copyrighted song owned by any Plaintiff. This failure of proof is fatal to Plaintiffs' claims: for Accused Videos without the accompanying copyrighted work, there is no genuine issue of material fact regarding direct infringement. *See King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) ("[C]opying is an issue to be determined by comparison of works, not credibility. King's failure to adduce evidence for such a comparison vitiates her claim.") (citation omitted); *Peel & Co. v. The Rug Market*, 238 F.3d 391, 398 (5th Cir. 2001) (summary judgment is proper on copyright infringement claim if the evidence does not permit a finding of substantial similarity); *Batiste v. Najm*, 28 F. Supp. 3d 595, 618-23 (E.D. La. 2014) ("no reasonable juror could find substantial similarity—as to the constituent elements stated in the complaint, as to any combination of those elements, as to the songs taken as a whole, or as to any part(s) thereof").

Here, Plaintiffs have failed to provide 3 original works of the songs that could be compared to the "infringing" "copies" of the Accused Videos, and 19 of the Accused Videos themselves.

(MF42-43.) For those videos, Plaintiffs have produced only copies of asserted copyright registrations. *Id.* The registration certificates contain only the title and description of the allegedly covered work. Without the deposit copies that accompanied the copyright applications, the factfinder cannot compare the Accused Videos to the asserted allegedly copyrighted works. Plaintiffs' "failure to adduce evidence for such a comparison vitiates [their] claim," *King*, 179 F.3d at 376, and Bang is entitled to summary judgment of non-infringement for these Accused Videos.

Furthermore, for the Accused Videos that have been produced with a corresponding original work, Defendants' review indicates that 24 of the videos contain songs that do not correspond to the original work that was produced by Plaintiffs. (MF44.) The songs in these Accused Videos are remixes, or sung by an artist different than the artist in the original work that Plaintiff produced. *Id.* As an example, Plaintiffs identified "…Baby One More Time" by Brittany Spears as one of the Accused Videos. (MF45.) Plaintiff provided evidence of the Accused Video in Bates SME_00003358, and evidence of the original work in Bates SME_00004344 – but upon review of the audio contained in both, it is evident that the audio does not match. (MF45-46.) The music used in that Accused Video is a remix of the identified song. *Id.* Another example is "All I Want For Christmas Is You" by Mariah Carey. (MF47.) One of the Accused Videos produced by Plaintiffs containing that song is not sung by Mariah Carey (*see* Bates SME_0003101), and it is evident that the audio does not match the original work Plaintiffs produced (*see* Bates SME_00004279). *Id.* Altogether, Defendants' review indicates that 24 of the videos contain songs that do not correspond to the original work that was produced by the Plaintiffs in this matter. (MF44.)

### B. Bang is Entitled to Partial Summary Judgment Because Plaintiffs Have Failed to Prove Actual Damages Under 17 U.S.C. § 504

Partial summary judgment on the issue of actual damages pursuant to 17 U.S.C. § 504

should be granted in Bang's favor because the record evidence is devoid of any evidence that Plaintiffs sustained any actual damages. Pursuant to 17 U.S.C. § 504, a copyright owner is entitled to recover his or her actual damages and any additional profits of the infringer. It is important that these two categories of compensation have different justifications and are based on different financial data. *On Davis*, 246 F.3d 152, 159 (2d Cir. 2001).[4]

An award of actual damages "undertakes to compensate the [copyright] owner for any harm he suffered by reason of the infringer's illegal act." *On Davis v. The Gap, Inc., supra*, at 153. Courts have held that assessing actual damages is a "case-by-case assessment of the factors involved, rather than the application of hard and fast rules." *Cohen v. United States*, 100 Fed. Cl. 461, 476 (Fed. Cl. 2011). To determine actual damages, courts customarily assess "the extent to which the market value of a copyrighted work has been injured or destroyed by an infringement." *United States v. King Feature Entm't, Inc.*, 843 F.2d 394, 400 (9th Cir. 1988). The loss in market value of the copyrighted work can be measured by the profits lost as a result of the infringement. *Cohen*, supra, at 477.

To determine the work's market value at the time of the infringement, courts have endorsed a hypothetical approach: "what a willing buyer would have been reasonably required to pay to a willing seller for work." *Mackie*, supra, at 917. Courts have also held that a reasonable licensing fee could be a good measure for determining actual damages due to a copyright holder. *See Coton v. Televised Visual X-Ography, Inc.*, 740 F. Supp. 2d 1299, 1308 (M.D. Fla. 2010); *see also McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 566 (7th Cir. 2003) ("It is not improper

---

[4] "The award of the infringer's profits examines the facts only from the infringer's point of view. If the infringer has earned a profit, this award makes him disgorge the profit to insure that he not benefit from his wrongdoing. The award of the owner's actual damages looks at the facts from the point of view of the copyright owner; it undertakes to compensate the owner for any harm he suffered by reason of the infringer's illegal act." *On Davis*, 246 F.3d at 159.

for a jury to consider either a hypothetical lost license fee or the value of the infringing use to the infringer to determine actual damages, provided the amount is not based on "undue speculation"); *see also On Davis*, 246 F. 3d at 172 ("[t]he hypothesis of a negotiation between a willing buyer and a willing seller simply seeks to determine the fair market value of a valuable right that the infringer has illegally taken from the owner. The usefulness of the test does not depend on whether the copyright infringer was in fact himself willing to negotiate for a license").

In this instant case, the record evidence fails to support Plaintiffs' claim for actual damages. Fed. R. Civ. P. 26(a) requires a party to make initial disclosures, including a computation of each category of damages claimed by the disclosing party. (MF54.) Plaintiffs have failed to meet this burden. (*Id.*) Additionally, Bang served document requests to Plaintiff in which they specifically requested "All documents and Communications relating to the calculation of actual damages, statutory damages, or lost profits, suffered by Plaintiffs as a result of Defendants' alleged infringement." (MF 55, Def.'s Second Set of Req. for Prod. ¶ 25). While Plaintiffs provided some license agreements for certain songs, none are for comparable use—in approximately 15 second social media videos—all produced agreements exceed the scope of Bang's alleged uses in this case. Plaintiffs have produced no evidence of license agreements that are indicative of what it would cost to license the music in the short videos at issue. Thus, the record is devoid of any evidence to support Plaintiff's claims for actual damages. As previously stated, in determining the relevant market value of a particular copyrighted work, courts will look at what a reasonable buyer would have paid for a particular work. Bang respectfully requests this Court to grant partial summary judgment in its favor on the issue of actual damages because Plaintiffs have failed to meet their burden as required by the Copyright Act.

### C. Bang Is Entitled to Partial Summary Judgment Because Plaintiffs Have Failed to Proffer Sufficient Non-Speculative Evidence To Support A Casual Relationship Between The Infringement And the Profits Generated Indirectly From The Alleged Infringement

Partial Summary Judgment should also be granted in favor of Bang because the Plaintiffs have failed to proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from the alleged infringement. Plaintiffs have no expert witness to testify as to any causal relationship.

Plaintiffs lack any evidence of profits attributable to the alleged infringement. While § 504(b) provides that the copyright owner is only required to present proof of gross revenues, "[i]n meeting its initial burden, … a copyright holder must show more than the infringer's total gross revenue from all of its profit streams." *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 367 (5th Cir. 2010) (emphasis in original). "Rather, 'gross revenue' refers only to revenue reasonably related to the infringement. *Id.* (emphasis in original). Before they can be awarded an accused infringer's profits, copyright owners are required to show "some causal connection between the infringement and profits claimed." *Oceans of Images Photography, Inc. v. Foster & Smith*, No. 8:11-cv-1160, 2012 WL 5878092, at *8 (M.D. Fla. Nov. 21, 2012); *Ordonez-Dawes v. Turnkey Props. Inc.*, 2018 WL 828124, at *3 (S.D. Fla. Mar. 26, 2008) (there must be "some nexus between the infringing activity and the gross revenue figure proffered by a plaintiff"); *see also Taylor v. Meirick*, 712 F.2d 1112, 1122 (7th Cir. 1983) ("If General Motors were to steal your copyright and put it in a sales brochure, you could not just put a copy of General Motors' corporate income tax return in the record and rest your case for an award of infringer's profits.").

There are no direct profits at issue in this case; that is to say, Plaintiffs do not allege that Bang sold Plaintiffs' copyrighted works. Rather Bang is alleged to have used the works in

16

approximately short videos relating to Bang beverages. A nexus between the alleged infringement and the defendant's profits is essential in such cases involving indirect profits. And where, as here, the accused use is not even traditional advertising, no causal nexus whatsoever between the alleged infringement and Bang's profits can be shown.

Plaintiffs have no evidence to show a causal connection between Bang's profits and its social media marketing. But even if Plaintiffs had such evidence, they cannot show a causal connection between Bang's profits and the accused roughly 297 posts of the thousands of posts that Bang makes to social media. Even if Bang's drink sales are attributable purely to social media marketing (and not, for example, to taste, to caffeine or calorie content, or to habitual purchase), Plaintiffs provide no evidence linking profits to these few posts. Plaintiffs do not even have an expert to proffer testimony about any possible causal nexus.

Even when alleged infringing material is used in a traditional marketing element that is just one of many media elements it is notoriously difficult to prove a link to profits. As the leading copyright law treatise states, "modern cases more frequently deny profits earned from advertising." *Nimmer on Copyright* § 14.03(B)(2)(b), *citing Deltak, Inc. v. Advanced Sys., Inc.*, 574 F. Supp. 400 (N.D. Ill. 1983) (Posner, J., sitting by designation)), vacated on other grounds, 767 F.2d 357 (7th Cir. 1985) (explaining that increased sales arising from infringing advertising to be too speculative on the facts, while acknowledging that, in theory, an award may be appropriate in certain cases).

Plaintiffs need evidence of a "causal connection between the infringement and profits claimed." *Oceans of Images Photography*, No. 8:11-cv-1160, 2012 WL 5878092, at *8. And Plaintiffs have no such evidence, and no expert to proffer such testimony. Plaintiffs lack any evidence of Bang's revenues that are "reasonably related" to the alleged infringement, and

17

accordingly, partial summary judgment in Bang's favor is warranted.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Bang Energy's Motion for Summary Judgment and enter judgment as a matter of law in Bang Energy's favor.

## REQUEST FOR HEARING PURSUANT TO LOCAL RULE 7.1(B)(2)

In accordance with Local Rule 7.1(b)(2), Bang Energy respectfully requests a hearing on this Motion. The estimated time required for argument is not more than one hour. Argument will permit the Court to make full inquiry of the parties, particularly because Bang Energy anticipates that Plaintiffs will attempt to dispute and/or controvert the material facts at issue.

Dated: July 13, 2022.

QUARLES & BRADY LLP

By: /s/ *Joseph T. Kohn*
Joseph T. Kohn
Florida Bar No. 113869
1395 Panther Lane, Suite 300
Naples, FL  34109
Telephone: (239) 434-4946
Facsimile:  (239) 213-5599
joseph.kohn@quarles.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 13, 2022, the foregoing document was electronically served upon all counsel of record.

/s/ *Joseph T. Kohn*
Joseph T. Kohn