# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-CV-22825-WPD

SONY MUSIC ENTERTAINMENT; SONY
MUSIC ENTERTAINMENT US LATIN LLC;
ZOMBA RECORDING LLC; ARISTA
MUSIC; ARISTA RECORDS LLC; LAFACE
RECORDS LLC; RECORDS LABEL, LLC;
VOLCANO ENTERTAINMENT III LLC,

                   Plaintiffs,

    v.

VITAL PHARMACEUTICALS, INC. *d/b/a* BANG ENERGY;
AND JACK OWOC, AN INDIVIDUAL,

             Defendants.

_____/

## PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiffs Sony Music Entertainment, Sony Music Entertainment US Latin LLC, Zomba Recording LLC, Arista Music, Arista Records LLC, LaFace Records LLC, Records Label, LLC, and Volcano Entertainment III LLC (collectively, "Plaintiffs" or "SME") respectfully submit this Motion for Partial Summary Judgment ("Motion") as to liability against defendants Vital Pharmaceuticals, Inc. *d/b/a* Bang Energy ("Bang") and Jack Owoc ("Owoc") (together, "Defendants").

## **INTRODUCTION**

There are no genuine disputes of material fact that Defendants willfully infringed SME's sound recording copyrights. Summary judgment as to liability should be granted to SME and this case should proceed to a trial on damages.

The material facts are straightforward, and are extremely similar to the undisputed facts recently found by the Court in a companion case: *UMG Recordings, Inc. v. Vital Pharms., Inc. d/b/a Bang Energy*, Case No. 21-cv-60914-CIV-DIMITROULEAS/SNOW (the "UMG Action"). As was the situation in the UMG Action, SME is the owner or exclusive licensee of the copyrights of 211 sound recordings (the "Recordings") that have been exploited commercially by Defendants in unique videos. Specifically, Defendants, an almost billion-dollar energy drink and lifestyle brand known as "Bang," and its CEO (Owoc), both promoted Bang products and the Bang brand using SME's Recordings in no less than 385 social media video posts.

Bang's marketing department also hired and supervised social media influencers (the "Influencers") to promote Bang products while, among other things, dancing or lip-syncing to the Recordings in additional social media video posts reaching billions of followers. Defendants' and their Influencers' uses of the Recordings occur over social media platforms such as TikTok, Instagram, Facebook, Triller and YouTube (the "Platforms"). The conceded objective of

Defendants' and their Influencers' uses of SME's Recordings in these infringing videos is to draw attention and 'coolness' to Bang, to enhance the Bang brand commercially, and to market and sell Bang's products.  Indeed, Bang *owns* the infringing videos created by the Influencers, which are "modern day" commercials for Bang and its products.

But, as in the UMG Action, Defendants have no licenses from SME to use the Recordings for any commercial purposes.  All of these facts are undisputed, and thus Defendants are liable for both direct and secondary copyright infringement.

Defendants responded to SME's allegations with a laundry list of eighteen largely boilerplate affirmative defenses.  Those defenses synthesize down to an assertion that Defendants supposedly thought that certain – but not all – of the Platforms allowed them to freely use SME's copyrighted music to advertise Bang products.  That purported belief is not a defense to copyright infringement as a matter of law.  And, as shown below, that excuse is not real:  there is no triable issue that Defendants' rampant infringements were anything other than willful.

Defendants are sophisticated intellectual property rights holders.  They maintain their own "Terms and Conditions" that expressly protect Bang's intellectual property.  They employ a "Chief IP Counsel" who reviewed the terms and conditions of Platforms multiple times in response to multiple cease and desist letters from rights holders, and who testified to understanding that those terms and conditions expressly prohibit the commercial use of SME's copyrighted music.  Indeed, the Platforms' terms could not have been clearer regarding the prohibition on using copyrighted content without permission, and that the use of any music available on the Platforms was limited to personal, non-commercial purposes.

Despite that, and after receiving claims from the three biggest record labels which represent thousands of artists (including SME, UMG, and Warner Music Group), Defendants never asked

the Platforms for clarity regarding Defendants' use of music.  They never removed all of their infringing videos from the Platforms, and never told Bang's Influencers to remove their infringing videos – which, once again, *Bang* owns.  Underscoring their dismissive attitude, Defendants did no more than respond to SME's cease-and-desist demand in April 2021 that they did "not agree" with SME's position, claiming not to have "any obligation" even to try to explain themselves.

Since being sued, Defendants have relied on non-specific, inadmissible and contradictory hearsay about purported "communications" from two of the Platforms  – TikTok and Instagram – where Defendants were supposedly *"encouraged"* (in the words of Bang's Chief IP Counsel, one of Bang's Rule 30(b)(6) deponents) to use SME's Recordings for commercial purposes.  That excuse, offered desperately simply to avoid a finding of willfulness, is wholly unsupported.

 Accordingly, summary judgment to SME as to Defendants' liability for willful direct, contributory and vicarious copyright infringement should be granted.

## FACTUAL BACKGROUND

### A.    Plaintiffs' Business

SME is engaged in the business, *inter alia*, of producing, marketing, distributing, selling, and/or licensing sound recordings.  (SME's Statement of Undisputed Material Facts ("SMF") ¶ 1). Licensing sound recordings, including for commercial use in social media, is an important part of SME's business.  (SMF ¶ 3).  The Recordings at issue include extremely popular songs by some of the world's hottest and best known artists.  (SMF ¶ 2).

### B.    Plaintiffs Exclusively Own Or Control The Copyrights At Issue

The record is uncontroverted that Plaintiffs exclusively own and/or control valid copyrights for the Recordings.  (SMF ¶¶ 4-9).  Plaintiffs are the named owners on copyright registration certificates for 115 Recordings.  (SMF ¶ 4).  Through written transfers, licenses and successor-in-interest relationships, Plaintiffs exclusively control the copyrights to 211 Recordings (including

3

the 115 referenced above), all of which are registered with the Copyright Office or that Plaintiffs

may enforce pursuant to Berne Convention protocols.  (SMF ¶¶ 4-9.)  Furthermore, Plaintiffs

possess exclusive copyrights in two pre-1972 Recordings that have been identified on schedules

with the Copyright Office.  (SMF ¶ 9).[1]

**C.      Plaintiffs Have Not Licensed Any Of The
          Recordings To Defendants To Be Used Commercially**

The record is uncontroverted that SME never licensed the Recordings to Defendants.

(SMF ¶ 57.)  There is no evidence of Plaintiffs (1) licensing Defendants, (2) licensing TikTok,

Instagram, Facebook, Triller or YouTube to allow those Platforms to permit end-users to use

Plaintiffs' Recordings for anything other than personal, non-commercial uses, or (3) authorizing

those Platforms to sublicense SME's Recordings for commercial use.   (SMF ¶¶ 55, 57-58.)

**D.      Defendants Use Of Social Media To Promote Bang And Its Products**

**i.      Defendants' Promotion Of The "Bang" Brand**

Bang is an energy drink company and lifestyle brand, with current revenues in excess of

$600 million and estimated to be approaching a billion dollars.  (SMF ¶ 11.)  Owoc is the founder,

Chief Executive Officer and Chief Scientific Officer of Bang.  (SMF ¶ 12.)

Bang is a sophisticated entity and knowledgeable about intellectual property.  (SMF ¶¶ 40-

42.)  Bang employs its own in-house, intellectual property counsel, with a staff of lawyers.  (SMF

¶ 40.)  On Bang's website, it has its own "Terms and Conditions" warning others not to infringe,

*inter alia*, its intellectual property.  (SMF ¶ 41.)  Bang has enforced its rights.  (SMF ¶ 42.)

Defendants eschew "traditional" marketing in favor of promoting Bang through a "very

big social media presence."  (SMF ¶ 13-18.)  Bang and Owoc both directly promote Bang through

---

[1] Pursuant to the Music Modernization Act of 2018, the right to the remedies provided in 17 U.S.C. §§ 502-505 applies to pre-1972 sound recordings.  17 U.S.C. §§ 1401(a)(1) & (f)(5).

their numerous social media accounts, which have millions of followers.  (SMF ¶¶ 14-20).  Bang spends millions of dollars annually on its promotion through social media.  (SMF ¶ 18).  Bang's branded hashtag has netted over 17.8 billion views on TikTok alone.  (SMF ¶ 17).

### ii.       Defendants' Retention Of Social Media Influencers To Promote Bang

Defendants also promote Bang by hiring and compensating popular Influencers to advertise Bang's products to Bang's and the Influencers' literally billions of collective social media followers.  (SMF ¶ 25-27).  Under those agreements, the Influencers are subject to Bang's supervision, direction and control with respect to the promotion of Bang and its products.  (SMF ¶¶ 31-39).

Bang imposes many requirements on the Influencers, including specifications about how its products must be featured, and how Bang's and Owoc's social media accounts must be "tagged" in the Influencers' videos.  (SMF ¶¶ 32-38).  Bang supplies the products that it wants commercially promoted in the Influencers' videos, and also regularly edits the Influencers' videos and captions accompanying the Influencers' posts.  (SMF ¶ 39).  Bang pays for the Influencers' videos and pays the Influencers to make them, including paying them 15% commissions from Bang's own profits for its products that are purchased using the Influencers' respective video promo codes.  (SMF ¶ 27-28, 30).  Critically, Bang also owns the Influencers' videos, either as works made for hire or through assignments signed by the Influencers.  (SMF ¶ 28).

The Influencers must additionally submit their videos to Bang's "auditing team" for pre-approval and to receive their compensation.  (SMF ¶¶ 31, 33-34, 37).  Bang maintains such supervision and control purportedly to ensure compliance with Bang's social media directives and relevant laws.  (SMF ¶ 34).  For example, and confirming the commercial nature of Defendants' and the Influencers' video activities, Bang purports to require that the Influencers' videos include

the words, **"#ad"** or **"#sponsor"** to be compliant with Federal Trade Commission rules regarding commercial activity.  (SMF ¶ 35).  Bang also purports to screen every Influencer video to determine whether it includes copyrighted music – including by using the music application, "Shazam".  (SMF ¶¶ 33-34, 36-37).  No Influencer video can be posted unless it has been approved by Bang's auditing team.  (SMF ¶ 37).  Bang wants popular music, such as SME's Recordings, to be featured in the Influencers' videos to give them maximum commercial appeal and entertainment value for Bang and its products.  (SMF ¶ 24).  As explained by Bang's Senior Director of Marketing, Meg Owoc in an email chain with the subject title "Engagement," it is Defendants' and the Influencers' uses of " popular music that gives the video[s] the WOW factor."  (SMF ¶ 24).

### iii.   Defendants' And The Influencers' Infringing Uses Of The Recordings

As detailed in SME's Statement of Material Facts, Defendants and the Influencers have created and posted more than 342 videos, posted to 385 URLs (some videos were reposted to more than one account), advertising Bang and its products on TikTok, Instagram, Facebook, Triller, and YouTube, which make use of SME's Recordings (the "Infringing Videos").  (SMF ¶¶ 21-23, 29).  The Infringing Videos for which SME seeks summary judgment are annexed to the accompanying Declaration of David Jacoby as Ex. D.

## E.   Defendants' Reckless Disregard Of Their And The Influencers' Infringing Activities

Defendants contend that their and their Influencers' rampant copyright infringements should be excused because they acted "innocently" and without awareness that they were infringing SME's copyrights.  But the Recordings are all distributed by SME with appropriate copyright notices, including the letter "P" in a circle.  (SMF ¶ 10).  Accordingly, Defendants cannot claim to be "innocent infringers" as a matter of law.  17 U.S.C. § 401(a) and (d).

Moreover, there are no facts that genuinely support Defendants' claim of "innocence."  On

the contrary, the record is uncontroverted that Defendants acted with, at the very least, willful blindness and recklessness in their prolific infringing conduct, as described below.

    **i.**    **The Social Media Platforms Expressly Prohibit**
           **Use of The Recordings For Any Commercial Purpose**

Defendants' claim of innocence is focused on their use of SME's Recordings from two Platforms in particular: TikTok and Instagram. Defendants contend that they believed TikTok and Instagram allowed Bang to use SME's Recordings for commercial purposes. The express terms and conditions of those Platforms flatly and objectively belie Defendants' pretense.[2]

    **a.**    **TikTok's Terms And Conditions**

TikTok's terms of use have at all relevant times been clear: TikTok's services are "provided for *private, non-commercial use*," and any use of music must be "solely for your *personal, non-commercial use* through your use of the Services and solely in compliance with these Terms." (SMF ¶ 44 (emphases added)). TikTok further emphasizes: "NO RIGHTS ARE LICENSED WITH RESPECT TO SOUND RECORDINGS AND THE MUSIC WORKS EMBODIED THEREIN THAT ARE MADE AVAILABLE FROM OR THROUGH THE SERVICE." (*Id.*)

TikTok has thus unambiguously instructed its users not to use copyrighted music – from whatever source – in video posts for commercial purposes. Defendants agreed to these terms and conditions for each of their numerous TikTok accounts. (SMF ¶¶ 15, 19, 44). Bang's Chief IP Counsel and one of its Rule 30(b)(6) deponents, Gideon Eckhouse ("Eckhouse"), testified that he reviewed TikTok's terms and conditions at least three times: (1) in the fall of 2020, after receiving

---

[2] Defendants do not contend that they have any right to use music for commercial purposes on Facebook, Triller, or YouTube, despite having done so with respect to at least 10 of the Recordings. (SMF ¶ 21) There is no evidence that Defendants ever reviewed the terms of use for those Platforms – Bang's Chief IP Counsel and Rule 30(b)(6) deponent testified that he does not recall doing so. (SMF ¶¶ 54, 56). Nor is there evidence in the record of any communications between Defendants and Facebook, Triller, or YouTube.

a cease-and-desist demand from another music rights holder; (2) after receiving a cease-and-desist demand in late-2020 from Universal Music Group ("UMG"); and (3) after receiving SME's cease-and-desist demand in April 2021.  (SMF ¶ 45).  Eckhouse testified to understating *each time* that TikTok's terms mean "users cannot violate someone's copyright by posting … music on TikTok," and that TikTok has a "[p]rohibition against using copyrighted music."  (SMF ¶ 45).  Another of Bang's Rule 30(b)(6) deponents, Daisy Grunewald ("Grunewald"), similarly testified that Bang considered TikTok's terms to prohibit commercial uses of copyrighted music.  (SMF ¶ 45).

TikTok does maintain (since about May 2020) a separate and limited library of royalty-free music available for commercial use, called the "Commercial Music Library."  (SMF ¶ 43, 46).  TikTok's Commercial Music Library is distinct from its broader Library of Licensed Music, which is a general music library (the "General Music Library") that is subject to TikTok's terms described above restricting music to "personal, non-commercial use."  (SMF ¶ 43-44, 46).  Defendants have at all relevant times been aware of the distinction between TikTok's two libraries.  (SMF ¶ 47).

SME's Recordings are part of TikTok's General Music Library and have never been available on its Commercial Music Library.  (SMF ¶ 46).  Defendants were made aware of that fact as well:  at Defendants' request, TikTok provided Defendants with a link to its Commercial Music Library contents in the fall of 2020.  (SMF ¶¶ 49-50).

        **b.**      <u>**Instagram's Terms And Conditions**</u>

Instagram's terms and conditions have at all relevant times stated:  "You can't … do anything that violates someone else's rights, including intellectual property rights."  (SMF ¶ 51).  Instagram's terms further represent that "[n]othing in these terms constitutes any authorization by us with respect to any use of music on any of our Products."  (SMF ¶ 51).  Instagram's terms additionally warn that "*[u]se of music for commercial or non-personal purposes in particular is*

*prohibited unless you have obtained appropriate licenses*," and that its users must "[k]eep in mind *you remain solely responsible for the content that you post, including any music that features in that content*."  (SMF ¶ 51 (emphases supplied)).

Instagram's terms and conditions have been equally clear and unambiguous in prohibiting the use of music for commercial purposes without direct licenses from music copyright holders. Again, in addition to agreeing to these terms and conditions when Defendants created their various Instagram accounts, Eckhouse testified that he reviewed these terms and conditions on three separate occasions, in 2020 and 2021.  (SMF ¶ 52).  Eckhouse testified that he (*i.e.*, Bang) understood Instagram's terms and conditions to contain warnings prohibiting the use of copyrighted music. (SMF ¶ 52).  Grunewald testified to the same.  (SMF ¶ 52).

### ii.    There Is No Evidence Of The Platforms "Encouraging" Defendants To Copy SME's Recordings For Commercial Purposes, As Defendants Claim

Throughout this case, Defendants have conveniently skipped past the clear and unambiguous terms and conditions discussed above and have claimed, instead, that TikTok and Instagram separately "encouraged" Defendants to make commercial use of SME's Recordings. (SMF ¶ 55).  Defendants' story is not supported by admissible evidence.[3]

According to Eckhouse, Bang received unspecified "communications," "statements," "representations," and "a webinar" from TikTok that supposedly "encouraged" Defendants and the Influencers to use SME's Recordings for commercial purposes – notwithstanding TikTok's terms and conditions to the contrary, and notwithstanding that SME's Recordings are not part of TikTok's Commercial Music Library.  Eckhouse cannot provide any specifics, and he was not party to any of these so-called "communications," etc., but he claims that representatives of TikTok

---

[3] Once again, Defendants do not claim to have been separately "encouraged" by Facebook, Triller, or YouTube.

(and maybe Instagram) at some point instructed Bang employees *how*, as a technological matter, to sync music to Defendants' postings, which Defendants extrapolated to mean that TikTok (and possibly Instagram) was "encouraging" Defendants to do so.[4]

Putting aside the unreasonableness of Defendants' supposition, there is no admissible evidence of any of the so-called "communications," "statements," "representations," and "webinar" from TikTok – there are only layers of inadmissible hearsay.[5]

Moreover, with respect to Instagram, two other Rule 30(b)(6) deponents of Bang, Grunewald and Meg Owoc, Bang's Senior Director of Marketing, testified that there were *no* communications from Instagram regarding the use of music.  (SMF ¶ 56).

Finally, and significantly with respect to Defendants' willfulness, Defendants did not reach out to *any* Platform with follow-up questions or attempts to confirm their claimed 'belief,' even after receiving multiple cease-and-desist demands from UMG, SME and WMG in 2020 and 2021. (SMF ¶¶ 53, 59-60, 64).

### iii.    Defendants' Continuing, Willful Infringements After Receiving Multiple Notices of Their Infringing Activities

UMG sent its cease-and-desist demand to Defendants in or about December 2020.  (SMF ¶ 52).  SME sent their cease-and-desist demand to Defendants in April 2021, identifying 252 instances of sound recording infringements.  (SMF ¶ 60).  Warner Music Group sent its own cease-

---

[4] Deposition of G. Eckhouse dated June 30, 2022, p. 59:10-20, 90:8-91:16, 134:5-136:13, 140:4-141:2, 142:13-17, 143:20-23, 146:16-147:3, 222:15-223:25.

[5] The only specific document identified by Eckhouse is a March 2020 e-mail between marketing and legal employees at Bang and a representative at TikTok regarding the subject of a particular TikTok paid-ad "Beta Program," which, it is undisputed, concerned only music which Defendants knew or had reason to know was inapplicable to SME's Recordings.  (SMF ¶¶ 48-50).

and-desist demand in July of 2021.  (SMF ¶ 52).[6]

Eckhouse admitted that, by no later than the winter of 2020/21, Defendants expected to face cease-and-desist demands and lawsuits from other record labels, including SME.  (SMF ¶ 59). Yet, there is no evidence that Bang did *anything* to remove the Infringing Videos.  (SMF ¶¶ 62-63, 66).  In early 2021, Defendants and the Influencers continued to post videos containing SME's Recordings.  (SMF ¶¶ 65, 67).  In response to SME's cease-and-desist demand in April 2021, Defendants simply expressed their disagreement with SME's position, but provided no reasoning because they "did not see any obligation to do so."  (SMF ¶ 61).

As of May 2022, 47 Infringing Videos posted by Bang itself – for which Bang had received specific notice through SME's cease-and-desist demand, First Amended Complaint and interrogatory responses – *still* remained posted.  (SMF ¶ 66).  Moreover, despite having specific knowledge that its Influencers continued to post videos containing SME's Recordings, Bang never directed the Influencers to remove their Infringing Videos from the Platforms, even though Bang owned those videos.  (SMF ¶ 63).  Nor is there evidence that Bang told the Influencers that their use of SME's Recordings in their posted content was the subject of a cease-and-desist demand. Consequently, the Influencers have continued to incorporate SME's Recordings in their promotional videos for Bang.  (SMF ¶ 67).

## **STANDARD OF REVIEW**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the moving party makes the required showing, the burden shifts to the non-moving party to rebut that showing

---

[6] Bang had received earlier cease-and-desist demands from other rights holders in the summer and fall of 2020.  (SMF ¶¶ 52, 59).

through admissible evidence. *E.g.*, *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011).

## MEMORANDUM OF LAW

### I.   THERE IS NO GENUINE DISPUTE THAT DEFENDANTS INFRINGED SME'S COPYRIGHTS

A plaintiff asserting copyright infringement must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).

### A.   SME's Ownership And/Or Control Over The Recordings Is Undisputed

As described above and in SME's accompanying Statement of Material Facts, the record is uncontroverted that SME exclusively owns and/or controls the Recordings at issue. (SMF ¶¶ 4-9). SME accordingly has standing to sue for copyright infringement under 17 U.S.C. §§ 410(c) and 501(b). *See also Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1302 (11th Cir. 2012).[7]

---

[7] Defendants assert four affirmative defenses challenging SME's registrations, for they neither sought nor elicited any supporting facts. Defendants could thus not possibly meet their burden of proving these defenses at a trial, and SME is entitled to summary judgment dismissing them, including their: Eighth Defense for fraud on the Copyright Office; Ninth and Sixteenth Defenses for failure to follow copyright registration requirements; and Tenth Defense for failure to join necessary and indispensable parties. (D.E. 30, Affirmative Defenses at ¶¶ 8-10, 16.) *See Spellman v. RSC Equip. Rental, Inc.*, No. 608CV1673ORL18KRS, 2010 WL 450400, at *5 (M.D. Fla. Feb. 8, 2010) (defendant bears burden of proving defenses); *PkStudios, Inc. v. R.L.R. Invs., LLC*, No. 2:15-CV-389-FTM-99CM, 2016 WL 4529323, at *7 (M.D. Fla. Aug. 30, 2016) (dismissing affirmative defense "that Plaintiff obtained its copyright registration 'by false information and/or fraud'" as improper and "factually unsupported") (citations omitted); *Home Design Servs., Inc. v. Park Square Enters., Inc.*, No. 6:02-CV-637-ORL28JGG, 2005 WL 1027370, at *6-7 (M.D. Fla. May 2, 2005) (same); *Malibu Media, LLC v. Fitzpatrick*, No. 1:12-CV-22767, 2013 WL 5674711, at *5 (S.D. Fla. Oct. 17, 2013) ("Defendant offers no [] argument for why another party is indispensable to the action and therefore Plaintiff is entitled to summary judgment on Defendant's non-joinder defense.") (citation omitted).

### B.      Defendants' Copying Of The Recordings Is Undisputed

Defendants have never seriously contested that their and the Influencers' Infringing Videos copy SME's Recordings.  On the contrary, Defendants acknowledge their and the Influencers' copying but primarily contend (albeit baselessly) that they thought they and the Influencers had some right from the Platforms to commercially use SME's Recordings.

Although a side-by-side comparison between the Infringing Videos and the Recordings is not required in this case[8], SME's confirmation of copying – performed twice – is described with respect to the Infringing Videos in the accompanying Declarations of Kobie Brown and David Jacoby.  (SMF ¶¶ 21, 29.)[9]

### C.      Defendants' Infringement Of SME's Copyrights Is Indisputable

The record is also uncontroverted that SME issued no licenses, either to Defendants or to the Platforms, authorizing use of the Recordings by end-users for commercial purposes.  (SMF ¶¶ 57-58).  All of the Infringing Videos that were posted by Defendants and by the Influencers, therefore, violated SME's copyrights.  *See, e.g.*, *Spinelli v. Nat'l Football League*, 903 F.3d 185, 203 (2d Cir. 2018) ("[I]t is without question that the sublicensor may not convey more than he owns, [internal quotations and citation omitted] and if a sublicensor has no right to issue a particular license, the sublicensee cannot acquire rights in copyrighted works simply because the

---

[8] *See* July 11, 2022 decision UMG Action ("UMG Dec.) at *12 ("It is also undisputed that Defendants posted approximately 140 TikTok videos utilizing portions of Plaintiffs' copyrighted works, …. Therefore, in this case, the fact finder need not make any subjective determinations regarding the similarity between the two works to establish the second element of a copyright infringement claim, copying of constituent elements of the work that are original.") (citation omitted).

[9] A small number of videos were not available for inspection at the close of discovery because Defendants had failed to preserve them.  (SMF ¶¶ 21, 29)

sublicensor did so anyway."). And the policies issued by those Platforms preclude any argument that they intended to provide any such sublicense. (SMF ¶¶ 44, 51).

Defendants are liable for such infringements under three separate theories:   direct, contributory and vicarious copyright infringement.

### 1.      Defendants Are Liable For Direct Infringement

SME's copyrights vest Plaintiffs with all of the exclusive rights conferred by 17 U.S.C. § 106, including, *inter alia*, the rights of reproduction, distribution, public performance via digital transmission, and the preparation of derivative works.

By creating, posting, reposting, distributing, and transmitting at least 284 Infringing Videos on and through the Platforms, Defendants have directly infringed SME's exclusive rights.  (SMF ¶ 21.)  *E.g.*, UMG Dec at \*19-20 (awarding UMG summary judgment on direct infringement liability under nearly identical facts); *UMG Recording, Inc. v. Escape Media Group, Inc.*, No. 11-cv-8407, 2014 WL 5089743, at \*19 (S.D.N.Y. Sept. 29, 2014) ("[T]he unauthorized reproduction, distribution, and public performance of sound recordings via the internet violates the Copyright Act.") (collecting cases);  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013-14 (9th Cir. 2001) ("download and upload copyrighted music ... constitute[s] direct infringement ....").[10]

### 2.      Bang Is Liable For Contributory Infringement

"A claim of contributory copyright infringement arises against one who intentionally induces or encourages the direct infringement of another."  *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1242 n.6 (11th Cir. 2014) (citing *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*,

---

[10] Eight of the Recordings are the same as those already found by this Court to have directly infringed UMG's copyrights:  *i.e.*, UMG's composition copyrights were found to have been directly infringed by Defendants in songs where SME owns the sound recording copyrights. Declaration of David Jacoby at ¶ 26, fn 4.

545 U.S. 913, 930 (2005)).  Defendants who "[k]now, or have reason to know" of direct copyright infringement by others, and who materially contribute to such infringement, are contributorily liable.  *Cable/Home Commc'n*, 902 F.2d at 845.

### a.   Bang Indisputably Knew Or Had Reason To Know Of The Influencers' Infringements

The Influencers' videos that used the Recordings to commercially promote Bang and its products infringed SME's copyrights.  The Influencers had obtained no direct licenses from SME and had received no sublicenses from the Platforms.  *See, e.g.*, *Joe Hand Promotions, Inc. v. Phillips*, No. 19-cv-21723, 2020 WL 3404964, at *2 (S.D. Fla. June 19, 2020) ("[T]he copyright owner need not prove any knowledge or intent on the part of the defendant to establish liability for copyright infringement.").  Bang knew or had reason to know of the Influencers' infringements – indeed, Bang had an auditing team in place for precisely that purpose.  (SMF ¶¶ 33-34.)  Bang likewise knew that it had not received any licenses from SME.  (SMF ¶ 57.)  And, as Bang started receiving cease-and-desist demands and lawsuits from multiple music companies in 2020-21, including SME, Bang indisputably knew that the Influencers had, and were continuing to, act unlawfully.  (SMF ¶¶ 52, 59-60, 63.)  *See Venus Fashions, Inc. v. ContextLogic, Inc.*, 2017 WL 2901695, at *23 (M.D. Fla. Jan. 17, 2017) (finding website operator had "reason to know" of copyrighted images on its site based on communications alerting operator to unauthorized display of images).

### b.   There Is No Genuine Dispute That Bang Materially Contributed To The Influencers' Infringements

There would not have been any Infringing Videos by the Influencers without Bang.  Bang engaged the Influencers to make the videos; Bang paid the Influencers to make the videos; Bang supplied the products to be promoted by the Influencers in their videos; Bang assisted in the

production and editing of the videos; Bang took ownership of the Influencers' videos; Bang reviewed and approved the posting of every video by the Influencers, including, necessarily, the music used in the video; and Bang made no efforts to remove the Influencers' videos, even after receiving numerous cease-and-desist demands and multiple lawsuits and threats of litigation from multiple major music groups, all complaining about the same, blatantly unauthorized conduct by Defendants and the Influencers.  (SMF ¶¶ 52, 60.)  These facts are dispositive - Bang materially contributed to the posting of *every* Infringing Video by the Influencers.  *See Michael Grecco Prods., Inc. v. RGB Ventures, LLC*, No. 3:16-cv-1335, 2017 WL 4077045, at *8 (M.D. Fla. Sept. 14, 2017) ("'[W]here the defendant knows of specific infringing content available on its system yet fails to remove it – that defendant may be [contributorily] liable, by operation of law, just as if he had actually intended to infringe'") (citation omitted).

Accordingly, there is no genuine dispute that Bang is liable for contributory infringement.

### 3. <u>Bang Is Vicariously Liable For The Influencers' Infringements</u>

"A claim of vicarious copyright infringement arises against one who 'profit[s] from [another's] direct infringement while declining to exercise a right to stop or limit it.'"  *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1242 n.7 (11th Cir. 2014) (quoting *Grokster*, 545 U.S. at 930); *accord Michael Grecco*, 2017 WL 4077045, at *9 ("'Vicarious infringement occurs "when the defendant profits directly from the infringement and has the right and ability to supervise the direct infringer."'") (citations omitted).

#### a. It Is Incontestable That Bang Had The Right <br> <u>And Ability To Supervise The Influencers' Videos</u>

Through its engagement agreements with the Influencers and through its audit team, Bang indisputably retained the right and ability to supervise, approve, reject, and remove the Influencers' Infringing Videos that Bang itself owned.  (SMF ¶¶ 28, 31-37.)  *See also* UMG Dec at * 18 ("Bang

argues that Plaintiffs present no evidence that would tend to establish that Defendants have any sort of legal right, let alone practical ability, to stop the influencers from posting the allegedly infringing videos.  Based upon the undisputed material facts …, the Court disagrees.").

The record is also uncontroverted that Bang made *no* efforts to remove the Influencers' Infringing Videos – which have been viewed and "liked" literally *millions* of times – even after receiving multiple cease-and-desist demands.  (SMF ¶¶ 13, 19, 55, 58-60, 62.)

### b.   There Is No Genuine Dispute That Bang Financially Benefited From The Influencers' Infringing Videos

Bang cannot seriously contest that it was economically incentivized by the Influencers' Infringing Videos, which were made with SME's Recordings to draw attention to Bang and its products.  (SMF ¶¶ 24, 29.)  That is why the Influencers' videos included the hashtags **"#ad"** and **"#sponsor"**, to indicate their commercial purpose in compliance with FTC regulations.  (SMF ¶ 35.)  That is also why Meg Owoc declared in the email chain with the subject "Engagement," that it is "the popular music" embodied in songs like SME's Recordings that enhances engagement and "that gives the video[s] the WOW factor."  (SMF ¶ 24.)  And, that is why Bang's Senior Social Media Manager testified that Bang used a sound recording by SME artist Doja Cat in a video for purposes of driving engagement between Bang and the TikTok audience.  (SMF ¶¶ 22, 24.)  *See Napster*, 239 F.3d at 1023 (explaining that financial benefit exists when "the availability of infringing material acts as a 'draw' for [the defendant's] customers"); *Escape Media*, 2015 WL 1402049, at *42 (explaining that evidence of financial benefit exists when the defendant "has an economic incentive to tolerate infringing conduct"); *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016) (explaining that financial benefit need not be "substantial").

Moreover, even though vicarious liability can be imposed when a supervisor's financial benefit is not "tied directly to sales of the infringing goods," *Arista Records LLC v. Lime Grp.*

*LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011), in this case Bang did tie its commercial fortunes to those of the Influencers by agreeing to pay Influencers 15% of Bang's own profits earned from the sales of its products that were purchased using the Influencers' respective promo codes displayed during their Infringing Videos.  (SMF ¶30.)

And finally, of course, Bang financially benefited by avoiding having to pay SME *any* license fees.  Accordingly, Bang is liable for vicarious copyright infringement.[11]

## II.  <u>THERE IS NO GENUINE DISPUTE THAT DEFENDANTS ACTED WILLFULLY</u>

"Willful infringement has been described as when the infringer acted with actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright." *Arista Records, inc. v. Beker Enters.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003) (citations omitted).  A finding of "'willfulness' under the Copyright Act does not require a malicious state of mind, but rather that the infringing party either knew, or should have known, that its conduct

---

[11] Defendants assert seven affirmative defenses that purport to deflect responsibility for their direct and secondary copyright infringement, including Defendants': <u>Fourth Defense</u> of license, consent or acquiescence; <u>Fifth Defense</u> of unclean hands; <u>Sixth Defense</u> of copyright misuse; <u>Fourteenth and Fifteenth Defenses</u> that SME caused its own harm; <u>Seventeenth Defense</u> of waiver, estoppel, acquiescence and/or ratification; and <u>Second Defense</u> of statute of limitations.  (D.E. 30, Affirmative Defenses at ¶¶ 2, 4-6, 14-15, 17.)  No facts exist in the record to support any of these defenses, and none is an impediment to SME being awarded summary judgment as to liability. *See Philpot v. MyArea Network, Inc.*, No. 8:20-CV-1239-VMC-TGW, 2021 WL 2649236, at *14 (M.D. Fla. June 28, 2021) (granting summary judgment dismissal of acquiescence, laches, estoppel, and statute of limitations defenses); *Fine v. Baer*, No. 5:15-CV-21-OC-28PRL, 2016 WL 4472965, at *3-4 (M.D. Fla. Aug. 23, 2016) (granting summary judgment dismissal of waiver defense); *Big Cat Rescue Corp. v. Big Cat Rescue Ent. Grp., Inc.*, No. 811CV02014JDWTBM, 2013 WL 12158980, at *9, 10 (M.D. Fla. Jan. 15, 2013) (granting summary judgment dismissal of unclean hands and copyright misuse defenses) (citations omitted); *see also Pk Studios*, 2016 WL 4529323, at *3, 7 (dismissing "boilerplate" consent, acquiescence and statute of limitations defenses); *Malibu Media, LLC v. Zumbo*, 2:13-CV-729-JES-DNF, 2014 WL 2742830, at *2-3 (M.D. Fla. June 17, 2014) (dismissing implied license defense).  Defendants' <u>Seventh Affirmative Defense</u>, that Sony failed to mitigate its damages, is also unsupported, but that defense concerns damages, not liability.  (D.E. 30, Affirmative Defenses at ¶ 7.)

represents copyright infringement." *Broad. Music, Inc. v. Bloodhound Brew, LLC*, No. 614CV1705ORL22KRS, 2015 WL 12830484, at *5 (M.D. Fla. Nov. 2, 2015).

There is no triable issue of fact that Defendants infringed SME's copyrights *at least* with reckless disregard for copyright infringement. Defendants were aware at all times that they had no licenses from SME to commercially use the Recordings. (SMF ¶¶ 40, 57-58.) Defendants were also aware that TikTok's terms prohibited Defendants from making any non-personal, commercial uses of music from the platforms without licenses from copyright holders. (SMF ¶ 45.)

Defendants cannot rely on unspecified "communications," "statements," "representations," and "a webinar" from TikTok that purportedly "encouraged" Defendants to commercially use SME's Recordings. Defendants have no admissible, non-hearsay evidence of any such "encouragement." *E.g.*, *Doe v. Carnival Corp.*, No. 19-24766-CIV, 2021 WL 7540787, at *3 (S.D. Fla. June 25, 2021) ("[I]nadmissible hearsay 'cannot be considered on a motion for summary judgment.'") (citations omitted).

Moreover, Defendants admit they knew by no later than the winter of 2020/21 that they were likely to face litigation from numerous music copyright holders, including SME, after having received multiple cease-and-desist demands by that time; yet they still did not take down the Infringing Videos or seek clarification from the Platforms regarding permitted use of music. (SMF ¶¶ 52, 59-60.) After receiving SME's cease-and-desist demand in April 2021, Defendants responded only conclusorily that they "disagreed" with SME's position, and Defendants made no efforts to remove their or their Influencers' Infringing Videos. (SMF ¶¶61-63) *See Arista*, 298 F. Supp. 2d at 1312 (finding willful infringement where "Plaintiffs repeatedly contacted Defendants regarding their infringing conduct and Defendants ignored Plaintiffs' communications."); *accord Bloodhound*, 2015 WL 12830484, at *5; *Broad. Music, Inc. v. PRB Prods.*, No. 6:13-cv-1917-Orl-

19

31KRS, 2014 U.S. Dist. LEXIS 108969, at *14-15 (M.D. Fla. July 21, 2014).   Accordingly, Defendants' willfulness is manifest.

### A.   Defendants' Claimed "Innocence" Is Not A Valid Or Genuine Defense

Defendants' beliefs about the existence of permission (*i.e.*, sublicenses) from the Platforms to commercially use the Recordings are entirely unsupported by admissible evidence and, at best, are idiosyncratic.   *See Pk Studios*, 2016 WL 4529323, at *4 ("'Innocent infringement of a copyright is not an affirmative defense to an infringement action.'") (citations omitted).   Moreover, where the Recordings all contain the letter "P" in a circle, Defendants cannot assert "innocence" as a matter of law.   17 U.S.C. § 401(d); *see also Malibu Media*, 2013 WL 5674711, at *4.   Accordingly, Defendants' innocent infringement defense does not stand in the way of an award of summary judgment to SME as to Defendants' liability for willful infringements.[12]

---

[12] Defendants' <u>Eleventh and Twelfth Defenses</u>, based upon the First and Fourteenth Amendments to the U.S. Constitution concerning unlawful State actions, are inapt as there is no constitutional right to infringe another's copyrights.   *E.g.*, *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 849-50 (11th Cir. 1990); *Johnson v. New Destiny Christian Ctr. Church, Inc.*, No. 615CV1698ORL37GJK, 2017 WL 1093446, at *4 (M.D. Fla. Mar. 23, 2017).   Nor does Defendants' <u>Thirteenth Defense</u> for fair use stand in the way; use of the Recordings as soundtracks to videos that commercially promote Bang and its products, and that enhance the entertainment value and evoke emotions for that purpose – for which SME would normally charge a licensing fee – is the antithesis of fair use.   *See, e.g.*, *Playboy*, 839 F. Supp. at 1557-58.   Defendants' <u>Eighteenth Defense</u> for *de minimis* copying – debunked by Meg Owoc's concession that it is "the popular music that gives the video the WOW factor" (SMF ¶ 24) – should likewise be dismissed. In fact, as Meg Owoc also conceded, users of Platforms who have no awareness of Bang may discover the Infringing Videos by searching only for SME's popular Recordings.   (Meg Owoc Dep. at 65:20-66:10.)   *See Malibu Media*, 2013 WL 5674711, at *4 ("Summary judgment [for plaintiff] is warranted because Defendant has not produced any evidence that his alleged use was qualitatively and quantitatively *de minimis*.").   Lastly, Defendants' <u>First Affirmative Defense</u> should be dismissed as duplicative of all of Defendants' other, invalid defenses.   *See id.* at *3.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court award them partial summary judgment as to the issue of Defendants' liability for willful copyright infringement, and awarding Plaintiffs such other and further relief as deemed just and proper.

Dated:  July 13, 2022                                    Respectfully submitted,

**PRYOR CASHMAN LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Telephone: (786) 582-3010
Facsimile:  (786) 582-3004


*s/ James G. Sammataro*
James G. Sammataro
Florida Bar No. 520292
David C. Rose (*admitted pro hac vice*)
Brendan S. Everman
Florida Bar No. 68702
jsammataro@pryorcashman.com
drose@pryorcashman.com
beverman@pryorcashman.com

*Attorneys for Plaintiffs*