# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:21-CV-22825-DIMITROULEAS/BECERRA

SONY MUSIC ENTERTAINMENT; SONY
MUSIC ENTERTAINMENT US LATIN
LLC; ZOMBA RECORDING LLC; ARISTA
MUSIC; ARISTA RECORDS LLC;
LAFACE RECORDS LLC; RECORDS
LABEL, LLC; VOLCANO
ENTERTAINMENT III LLC,

     Plaintiffs,

  v.

VITAL PHARMACEUTICALS, INC. *d/b/a*
BANG ENERGY AND JACK OWOC, AN
INDIVIDUAL

     Defendants.

_____/

### DECLARATION OF DAVID G. JACOBY IN SUPPORT OF
### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I, David G. Jacoby, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.     I am over the age of 18 and am competent to make this declaration. I am Senior

Vice President, Head of U.S. Litigation, Business & Legal Affairs of Plaintiff Sony Music

Entertainment.

2.     I have been employed by Sony Music Entertainment (or its predecessors) since

2001, and as in-house counsel, I manage and supervise litigation for Sony Music Entertainment

and its subsidiaries and affiliates that own or control copyrights in sound recordings, including

Sony Music Entertainment, Sony Music Entertainment US Latin LLC, Zomba Recording LLC,

Arista Music, Arista Records LLC, LaFace Records LLC; Records Label, LLC, Volcano

Entertainment III LLC (collectively, "SME" or "Plaintiffs"). I have personal knowledge of the

matters set forth in this declaration and submit it in support of Plaintiffs' Motion for Summary Judgment.

3.   Through my employment and position at SME, I am familiar with its business records, including documents such as copyright certificates, recording agreements and other agreements with third parties (including those referenced in this declaration) pursuant to which the Plaintiffs acquired ownership of, and/or control of exclusive rights to, the sound recordings at issue in this litigation. Also through my position at SME, I have knowledge of the processes through which the SME acquires copyrighted works, including through past acquisitions of other corporate entities and copyright catalogs, as well as knowledge of SME's business and contractual relationships. In addition, I am generally familiar with SME's asset purchase agreements, recording agreements, exclusive license agreements, and the company's copyright registration process in the United States.  If called upon as a witness, I could and would testify competently to the information contained herein.

### SME's Business and its Copyrighted Sound Recordings

4.   SME, itself and through subsidiaries and affiliated companies, is engaged in the business of producing, marketing, distributing, selling, and/or licensing sound recordings featuring some of the most popular artists in the world, including some of the hottest current artists such as, by way of example only, Lil Nas X, Harry Styles and Doja Cat, as well as iconic artists such as Beyoncé, Britney Spears, Justin Timberlake and Mariah Carey.  SME develops, markets, sells, licenses and distributes sound recordings and audiovisual works through various record labels, including Columbia Records, RCA Records, Epic Records, and many others.

5.   SME's catalog of copyrighted sound recordings is extremely valuable, encompassing some of the most popular sound recordings performed by an array of world-renowned artists, including

"Don't Stop Believin'" by Journey, "All I Want For Christmas Is You" by Mariah Carey, "Billie Jean" by Michael Jackson and "September" by Earth, Wind & Fire, to name a few of the tracks at issue in this case.

6. SME's copyrights are a core asset, and are central to its business. SME commonly enters into written agreements through which it owns or controls the exclusive rights under copyright to any sound recordings created or distributed pursuant to those agreements. Accordingly, SME seeks to protect its copyrights, including through registration with the U.S. Copyright Office.

7. Licensing its sound recordings for use in third party products — including for use in social media videos and in online advertising — is an important part of SME's business, and SME has an entire department devoted to it. Many of these licenses can be for substantial amounts – well into, and sometimes in excess of, five figures. The millions of dollars in revenues generated from these licenses are shared with SME's artists.

<u>**SME's Content At Issue In This Lawsuit**</u>

8. **Exhibit A** annexed hereto is a spreadsheet listing the 211 sound recordings (the "Copyrighted Recordings") that have been incorporated into 342 separate and distinct videos posted by Defendants and social media influencers acting for their benefit and on their behalf, onto 385 unique URLs.[1] All of the Copyrighted Recordings have been directly and/or secondarily infringed by the Defendants, and Plaintiffs seek partial summary judgment as to liability with respect to all but eight of them.[2] A list of all 342 videos on which Plaintiffs seek summary judgment as to liability – identifying each video by its URL, the date it was posted, and the SME

---

[1] The Copyrighted Recordings and the videos at issue in this matter that infringe them are identified in Exhibit 1 to the First Amended Complaint (D.E. 29) and in Exhibit A to Plaintiffs' Supplemental and Amended Responses and Objections To Defendant Vital Pharmaceutical's Interrogatories, which includes infringing videos discovered after the First Amended Complaint was filed. A true and correct copy of Plaintiffs' Supplemental and Amended Responses and Objections To Defendant Vital Pharmaceutical's Interrogatories is attached hereto as Exhibit C.

[2] Plaintiffs are not seeking summary judgment with respect to the eight Copyrighted Recordings for which copyright registrations have not yet been issued by the U.S. Copyright Office.

artist and track – is annexed hereto as Exhibit D.  Annexed as Exhibit D1 is a list of the 385 unique URLs for the 342 infringing videos, identifying the URL, the date it was posted, the SME artist and track and whether it was posted by Defendants or their social media influencers.  Annexed as Exhibit D2 are screenshots of the 342 infringing videos.  Plaintiffs' rights in the Copyrighted Recordings at issue in this action, and their standing to sue with respect to those Copyrighted Recordings, are addressed in paragraphs 34 through 97 below.

9.   All of SME's Copyrighted Recordings have been registered with the U.S. Copyright Office with only the following exceptions: (i) six originate outside of the United States for which Plaintiffs have the right to pursue claims in this action subject to the Berne Convention (*See* Exhibit A, Entry Nos. 12, 15, 52, 64, 112, and 133); (ii) two are recordings fixed prior to February 15, 1972 for which Plaintiffs have filed the appropriate schedules with the Copyright Office to obtain the right to enforce the copyrights in those recordings under the Music Modernization Act. (*See* Exhibit A, Entry Nos. 103 and 161); and (iii) there are eight Copyrighted Recordings for which applications for registration are pending.  (*See* Exhibit A, Entry Nos. 20, 51, 57, 90, 122, 123, 124, and 194).

10. **Exhibit A** identifies the Bates ranges for each corresponding Copyright Registration Certificate, Copyright Office Public Catalog Online Search Result, Pending Copyright Application and Copyright Office Unofficial Certificate Preview produced by Plaintiffs to the Defendants in discovery.

11. True and correct copies of the Copyright Registration Certificates, Copyright Office Public Catalog Online Search Results, Pending Copyright Application and Copyright Office Unofficial Certificates are annexed collectively hereto as **Exhibit A1** to this Declaration.

12. As explained in detail below, at all times relevant to this proceeding, Plaintiffs owned or controlled exclusive rights under 17 U.S.C. § 106 in or to each of the Copyrighted Recordings at issue in this action. Plaintiffs possess the exclusive rights, among other things, to reproduce the Copyrighted Recordings, to distribute the Copyrighted Recordings to the public, to perform the Copyrighted Recordings publicly by means of a digital audio transmission (*e.g.*, over the Internet), and to create derivative works from the Copyrighted Recordings ("SME's Exclusive Rights").

13. When SME publicly distributes its sound recordings, including the Copyrighted Recordings, it is SME's policy and practice to publish them with copyright notices as set forth in 17 U.SC. § 402. This can be seen on physical product that is sold through physical retailers, and on digital product that is available online. In discovery, Plaintiffs produced screenshots of the digital albums and singles available on Apple iTunes and on Amazon which clearly display the copyright notices for each corresponding Copyrighted Recording. The Bates Nos. for each corresponding screenshot are identified in columns K and L of Exhibit A.

14. True and correct copies of the Screenshots showing these Copyright Notices are annexed hereto collectively as **Exhibit A2**.

15. **Exhibit B** identifies the Copyrighted Recordings for which Plaintiffs are not the Copyright Claimant at the U.S. Copyright Office, and sets forth the corresponding chain of title documents and Bates ranges for each document produced in support of Plaintiffs' claim of ownership or control. True and correct copies of the agreements and other chain of title documents referenced below accompany this Declaration collectively as **Exhibit B1**.

16. Accordingly, as discussed below, Plaintiffs' ownership interests in the Copyrighted Recordings can be divided into three general categories: (1) where a Plaintiff is a named claimant on the Copyright Registration; (2) where a Plaintiff acquired ownership or an exclusive license

through its acquisition of, or merger with, another entity (*i.e.*, as a successor-in-interest to the original named copyright claimant), or where a Plaintiff, pursuant to a corporate name change, is the same entity as a claimant with a different name; and (3) where a Plaintiff acquired ownership or an exclusive license from a written agreement with a third party.

**Plaintiffs' Agreements With Various Social Media Platforms**



**The Platforms Did Not Sub-License to its Users the
Right to Use SME Sound Recordings For Commercial Purposes**

22.  Because SME did not grant the Platforms the right to permit its end-users to use SME sound recordings for commercial purposes, these Platforms could not have possibly sublicensed that right to Defendants. However, in any case, the relevant terms of use, policies or guidelines for the Platforms not only did not sub-license the right to use SME's copyrights for commercial purposes, they explicitly forbade the use of copyrighted material without obtaining a license from the rightsholder.   In that regard, and by way of example, I respectfully refer the Court to the following:

        a.  With regard to TikTok, the Declaration of Bryan Cosgrove on behalf of TikTok filed in connection with SME's Motion, which attaches as Exhibit 1 true and correct copies of TikTok's Terms of Service, Community Guidelines, and Intellectual

Property Policy, which have consistently been in effect since at least February 2019.

b.  With regard to Facebook and Instagram, Exhibit I attached hereto, is a true and correct copy of Facebook's Terms of Service effective as of April 19, 2018 through January 3, 2022; Exhibit J hereto is a true and correct copy of Facebook's Music Guidelines, which since at least 2018 have been incorporated by and linked to Instagram's Terms of Use;  Exhibit K hereto, which is a true and correct copy of Instagram's Terms of Use effective as of April 19, 2018 through the present, which incorporate Exhibit J hereto.

c.  With respect to YouTube, Exhibit L hereto, which is a true and correct copy of YouTube's Terms of Service in effect from June 2010 to December 2019.

d.  With respect to Triller, Exhibit M hereto, which is a true and correct copy of Triller's Terms of Service in effect from December 2020 to February 2022.

**<u>Defendants' Infringement</u>**







---

[4] A sound recording contains two copyrights; a copyright with respect to the performance reflected by the sound recording, and a copyright in the underlying musical composition (i.e., the music and lyrics of a song). An example is the copyright to the musical composition of *I Will Always Love You*, which was written by Dolly Parton and which is owned by Ms. Parton, or her publishing company, and the copyright to Whitney Houston's recording of that song, which is controlled by SME, the record label. A person who uses the Whitney Houston recording without permission has infringed both copyrights. Attached as Exhibit O are videos for which SME is seeking summary judgment (identified by artist, track, and URL) because they infringe SME's sound recording copyrights and are *identical* to the videos on which UMPG moved for summary judgment because they infringe UMPG's  musical composition copyrights (which are embodied in the respective SME sound recordings)

**Commencement of This Action and Defendants' Continuing Infringement**

29. On August 3, 2021, Plaintiffs filed their Complaint with Exhibit 1 identifying 209 Infringing Videos incorporating 132 of Plaintiffs' Copyrighted Recordings that had been discovered at that time. (D.E. 1).[5] On January 31, 2022, Plaintiffs filed their First Amended Complaint identifying 261 Infringing Videos that included 160 of Plaintiffs' Copyrighted Recordings. (D.E. 29). SME confirmed that its Copyrighted Recordings were used in these additional Infringing Videos using the same methodology described above. Notably, Exhibit 2 to the First Amended Complaint identified 46 infringing videos that were posted by Bang itself on its own social media accounts that remained online at the end of January 2022 despite Plaintiffs' notice of infringement to Defendants many months earlier. (D.E. 29).

30. Since the filing of the First Amended Complaint, Plaintiffs have discovered even more infringing videos posted by Defendants, and/or social media influencers acting on Defendants' behalf and/or for Defendants' benefit, that contain Plaintiffs' Copyrighted Recordings. Some of these new Infringing Videos were discovered as a result of information that was produced during the discovery process in this case, including the identification of Bang Influencers. SME followed the same methodology to confirm that its Copyrighted Sound Recordings were used in the newly discovered Infringing Videos. As of June 9, 2022, Plaintiffs had discovered an additional 84 Infringing Videos posted by Bang and its Influencers that Plaintiffs identified on Exhibit A to

---

[5] The disparity between the number of Infringing Videos identified in my April 13, 2021 letter and in Plaintiffs' Complaint is attributable to the fact that certain Infringing Videos identified in my letter infringed sound recordings for which a copyright registration had not yet been requested or issued from the U.S. Copyright Office.

11

Plaintiffs' Supplemental and Amended Responses and Objections To Defendant Vital Pharmaceutical's Interrogatories. *See* Ex. C. A number of those additional Infringing Videos were by Influencers known as Michael Le, Q-Park and Helga Model whose Infringing Videos for Bang Plaintiffs identified in their January 2022 First Amended Complaint. (D.E. 29 at ¶¶ 66-67, 95, Ex. 2 rows 87, 88, 95, 166, 218, 220, 222).

31. Moreover, Bang continued to keep the Infringing Videos active on the Platforms. Indeed, in May 2022, over a year after SME's April 13, 2021 demand letter, SME identified 47 videos that Bang itself posted and that remained online and accessible to Defendants' millions of followers. Attached hereto as Exhibit Q are screenshots of those 47 videos.

32. Ultimately, Plaintiffs are presently aware of and have identified to Defendants 245 videos posted by Defendants on their various Platform accounts that include Plaintiffs' Copyrighted Recordings. Similarly, Plaintiffs are presently aware of and have identified to Defendants 97 videos using Plaintiffs' Copyrighted Recordings that the Influencers have posted to promote Bang and its products. Accordingly, Plaintiffs have identified a total of 342 Infringing Videos that are at issue. *See* Ex. D.

33. In recent weeks, SME has identified additional infringing Influencer Videos, whereby the Influencers have continued to market and promote Bang's products to their tens of millions of collective social media followers. The following are links to examples, available today, which include posts by Influencers that had previously been the subject of SME's claims against Bang:

    a.  https://www.tiktok.com/@qpark/video/7114003918790659374

       (Artist – Duke & Jones, Louis Theroux, Track – Jiggle Jiggle);

    b.  https://www.tiktok.com/@tonylopez/video/7092208018795990318

       (Artist – Nicky Jam, J Blavin, Track – X);

    c.   https://www.tiktok.com/@thehypehouse/video/7069877572749823275

       (Artist – Britney Spears, Track – Toxic).

Attached as Exhibit R are screenshots of these infringing videos.

<b><u>Plaintiffs Own or Control the Infringed Recordings</u></b>

**I.**    **Copyrighted Recordings For Which Plaintiffs Are Named Claimants**

34. In total, Plaintiffs are named claimants on the copyright registrations for 115 of the Copyrighted Recordings at issue in this action.

35. Plaintiff **Sony Music Entertainment** is a named claimant on the copyright registrations for ninety-five (95) Copyrighted Recordings. *See* Exhibit A, Entry Nos. 2, 6, 7, 11, 16, 18, 19, 21, 23, 24, 25, 28, 29, 39, 40, 41, 47, 55, 56, 58, 60, 61, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 88, 92, 94, 95, 100, 102, 104, 108, 111, 115, 116, 117, 118, 124, 126, 127, 128, 129, 130, 131, 132, 134, 137, 140, 141, 142, 143, 144, 145, 146, 147, 148, 153, 157, 159, 160, 163, 164, 165, 167, 170, 174, 176, 178, 183, 187, 188, 190, 191, 192, 195, 196, 197, 198, 201, 203, 205, 206, 208;  Exhibit A1.

36. Plaintiff **Sony Music Entertainment US Latin LLC** is a named claimant on the copyright registrations for ten (10) Copyrighted Recordings. *See* Exhibit A, Entry Nos.  34, 49, 50, 50, 90, 98, 99, 168, 173, 194; Exhibit A1.

37. Plaintiff **Zomba Recording LLC** is a named claimant on the copyright registrations for one (1) Copyrighted Recording. *See* Exhibit A, Entry No. 53; Exhibit A1.

38. Plaintiff **Arista Records LLC** is a named claimant on the copyright registrations for one (1) Copyrighted Recording. *See* Exhibit A, Entry No. 200; Exhibit A1.

39. Plaintiff **LaFace Records LLC** is a named claimant on the copyright registrations for one (1) Copyrighted Recording. *See* Exhibit A, Entry No. 65; Exhibit A1.

13

40. Plaintiff **Records Label, LLC** is a named claimant on the copyright registrations for six (6) Copyrighted Recording. *See* Exhibit A, Entry No. 3, 4, 5, 97, 113, 166; Exhibit A1.

41. Plaintiff **Volcano Entertainment III, LLC** is a named claimant on the copyright registration for one (1) Copyrighted Recording. *See* Exhibit A, Entry No. 172; Exhibit A1.

II.     **Copyrighted Recordings In Which Plaintiffs Acquired Ownership Or An Exclusive License Through Acquisition Of Or Merger With Another Entity, Corporate Name Change, Or One Of Its Labels**

A.  <u>Plaintiff Sony Music Entertainment</u>











**C.  Plaintiff Arista Music**















copyright in this Copyrighted Recording.  Additionally, Sony Music Entertainment is identified in













IV.     **Copyrighted Recordings Through Berne Convention and Under the Music Modernization Act ("MMA")**



5.





Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed in New York, New York.

Dated: July 13, 2022

David G. Jacoby
Senior Vice President, Head of U.S. Litigation
Business & Legal Affairs of Sony Music Entertainment