UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-22825-CIV-DIMITROULEAS

SONY MUSIC ENTERTAINMENT, *et al.*,

Magistrate Judge Becerra

      Plaintiff,

vs.

VITAL PHARMACEUTICALS, INC., *et al.*,

      Defendant.

_____/

## <u>OMNIBUS ORDER</u>

THIS CAUSE is before the Court upon Plaintiffs Sony Music Entertainment; Sony Music Entertainment US Latin LLC; Zomba Recording LLC; Arista Music; Arista Records LLC; LaFace Records LLC; Records Label, LLC; and Volcano Entertainment III LLC (collectively, "Plaintiffs" or "SME")'s Motion for Partial Summary Judgment [DE 132] and Defendants Vital Pharmaceuticals, Inc., d/b/a Bang Energy and Jack Owoc (collectively, "Defendants")'s Motion for Summary Judgment [DE 126/128 (sealed)] (collectively, the "Motions"). The Court has carefully considered the Motions [DE's 126/128 (sealed), 132], the Responses [DE's 161/173 (sealed), 170], the Replies [DE's 180, 183/188 (sealed)], the statements of material facts [DE's 127/129 (sealed), 133/142 (sealed), 162/174 (sealed), 171, 181, 184/189 (sealed)], the evidence submitted in the record, and is otherwise fully advised in the premises. The Court held a hearing on the Motions on September 9, 2022. *See* [DE 213]. For the reasons stated below, Plaintiffs' motion is granted in part and Defendants' motion is denied.

1

# I.  BACKGROUND[1]

Plaintiffs are in the business of producing, marketing, distributing, selling, and/or licensing sound recordings. SME SOF ¶ 1. Plaintiffs' catalogs of copyrighted music works are extremely valuable and encompass works by some of the world's best-known artists. SME SOF ¶ 2. Licensing sound recordings, including for commercial use in social media, is an important part of Plaintiffs' business. SME SOF ¶ 3.

Plaintiffs own or control an aggregate of 211 copyrighted sound recordings at issue in this case. SME SOF ¶ 4; Bang SOF ¶ 56.[2] Plaintiffs own or control exclusive rights to 115 recordings by virtue of being a named claimant on copyright registrations. SME SOF ¶ 5; Bang SOF ¶ 57. Plaintiffs own or control 46 recordings through acquisition of or merger with another entity. SME SOF ¶ 6. Plaintiffs own or control 42 recordings by having acquired ownership or an exclusive license through a third party. SME SOF ¶ 7.[3] Plaintiffs own or control six recordings through ownership or an exclusive license from a foreign affiliate. SME SOF ¶ 8.

---

[1] All statements in the Background section are derived from uncontested portions of the parties' respective Statements of Material Facts and supporting materials, unless otherwise noted. Facts taken from Plaintiffs' Statement of Undisputed Material Facts [DE 133/142 (sealed)], Defendants' Response to Plaintiffs' Statement of Undisputed Material Facts and Defendants' Statement of Additional Facts [DE 171], and Plaintiffs' Response to Defendants' Additional Facts [DE 184/189 (sealed)] are cited as "SME SOF." Facts taken from Defendants' Statement of Undisputed Material Facts [DE 127/129 (sealed)], Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts and Plaintiffs' Statement of Additional Facts [DE 162/174 (sealed)], and Defendants' Reply to Plaintiffs' Statement of Additional Facts [DE 181] are cited as "Bang SOF." The Statements of Fact and responses thereto include various citations to specific portions of the record. Any citations herein to the statements of facts and responses thereto should be construed as incorporating those citations to the record.

[2] Defendants' response to this asserted undisputed fact is: "Disputed. A total of 18 sound recordings found in 22 videos are not 'at issue' in this case. (*See* Declaration of Gideon Eckhouse dated July 28, 2022, at ¶ 4.) 18 songs are not found in the videos produced by Plaintiff in their original forms, but are rather remixes, contain a different tempo, are sung by an artist different than the artist in the original work that Plaintiff produced, are not part of the uploaded video, are of a very short duration, and/or are unrecognizable in the video. *Id.*" For the same reasons stated in section III.B. *infra* regarding SME SOF ¶ 21, this statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 4 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2); section III.B *infra*.

[3] Defendants' response to this asserted undisputed fact is: "Disputed. No evidence has been provided that an exclusive license has been granted for the work, 'Oh My God,' by Adele. (*See* D.E. 136, Jacoby Dec. at ¶ 90.)." Based on the Court's discussion in section III.A. *infra*, and the fact that Plaintiffs' asserted undisputed fact ¶ 7 is supported by the evidence in the record, the Court disagrees and will deem admitted Plaintiffs' fact in ¶ 7.

Plaintiffs own or control two recordings created before 1972, for which Plaintiffs filed schedules with the U.S. Copyright Office. SME SOF ¶ 9; Bang SOF ¶ 59. Plaintiffs distributed all of the recordings with the appropriate copyright notice. SME SOF ¶ 10.

Founded in 1993, Defendant Vital Pharmaceuticals, Inc., d/b/a Bang Energy ("Bang") is an energy drink and sports nutrition supplement company that sells the popular Bang Energy drink. SME SOF ¶ 11; Bang SOF ¶ 1.  Defendant Jack Owoc ("Owoc") is the founder, owner, Chief Executive Officer, and Chief Scientific Officer of Bang. SME SOF ¶ 12; Bang SOF ¶ 2. Bang Energy drinks are currently sold in all 50 states nationwide through retail grocery and specialty chains, wholesalers, club stores, mass merchandisers, convenience stores, and food-service customers. Bang SOF ¶¶ 5–6. Bang Energy drinks are also sold on Bang's website, Bang's Amazon storefront, and through brick-and-mortar stores. Bang SOF ¶ 7. Since 2017, Bang has sold over 100 million units of Bang Energy drinks and generated over $1 billion gross revenue, making Bang Energy the third-largest selling energy drink in the United States. Bang SOF ¶ 8.

Bang's success is backed by its marketing strategies that appeal to its consumers. Bang SOF ¶ 9. Bang utilizes the internet to market through various social media platforms, web campaigns, and influencers. Bang SOF ¶¶ 12, 17; *see also* SME SOF ¶ 14. Bang spends tens of millions of dollars annually on its promotion through social media. SME SOF ¶ 18; Bang SOF ¶ 72. Bang has several official social media accounts on TikTok, Instagram, YouTube, Facebook, and Triller. SME SOF ¶ 15. Bang makes regular posts on TikTok and Instagram, and thousands of posts across all online platforms. Bang SOF ¶ 18. Bang has a "very big social media presence" with several million followers across its official accounts. SME SOF ¶ 16. For example, as of November 18, 2019, Bang had over one million followers on Instagram. Bang SOF ¶ 19. Bang's

branded hashtag has netted over 17.8 billion views alone. SME SOF ¶ 17. In addition, Owoc has official social media accounts created by Bang, including on TikTok and Instagram. SME SOF ¶ 19. Both of those accounts are designated as business accounts. SME SOF ¶ 19. Bang believes popular music, such as Plaintiffs' recordings, gives social media posts "the WOW factor." SME SOF ¶ 24.[4]

In addition, Bang engages popular influencers ("Influencers") to promote and market Bang and its related products through the Influencers' videos on social media platforms (the "Influencer Videos"). SME SOF ¶ 25. Part of Bang's marketing expenditures are "model appearance" fees, which are payments to the Influencers for promoting Bang's products. Bang SOF ¶ 72. The Influencers and Defendants have a combined audience of billions of collective social media followers. SME SOF ¶ 26. Bang owns the Influencer Videos, either through work for hire agreements or assignments by the Influencers to Bang. SME SOF ¶ 28.[5] In its agreements with the Influencers, Bang agrees to pay the Influencers a 15% commission from its own profits for any Bang products that are purchased using that Influencer's promo code. SME SOF ¶ 30.  Under the terms of Bang's agreements with the Influencers, the Influencers are

---

[4] Defendants' response to this asserted undisputed fact is: "Disputed. Bang did not look at 'whether the engagement with videos increased or decreased depending upon the music that was used.' (*See* D.E. 133-5, Camacho Dep. at 92:1-20.)" This statement by Defendants only clearly challenges the assertion in ¶ 24 that popular music like Plaintiffs' recordings "enhances engagement with social media video posts," which the Court has omitted from the Background section. This statement by Defendants does not otherwise "clearly challenge" the fact asserted by Plaintiffs in ¶ 24 and therefore does not create a genuine dispute of fact as to the remainder of Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

[5] Defendants' response to this asserted undisputed fact is: "Disputed. Bang owns influencer content only to the extent the content was produced or created in performing the services under each influencer's respective agreement with Bang. (See D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996—VPX-SME-039997). Bang does not own any other influencer content, including content that may feature Bang or Bang products. *Id.*" This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 28 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

subject to Bang's supervision, direction, and control with respect to the promotion of Bang. SME SOF ¶ 31.[6]

Bang has promulgated guidelines for the Influencers directing them on how to promote and market Bang and its related products in the Influencer Videos (the "Social Media Guidelines"). SME SOF ¶ 32. Bang maintains supervision, direction, and control over the Influencer Videos through Bang's "audit team." SME SOF ¶ 33.[7] Bang's audit team purportedly ensures the Influencers' compliance with Bang's Social Media Guidelines, the platforms' respective social media guidelines, and relevant laws, including but not limited to copyright laws. SME SOF ¶ 34. For example, Bangs requires that the Influencers' videos include the words "#ad" or "#sponsor" to be complaint with Federal Trade Commission rules. SME SOF ¶ 35. Bang's policy for itself and its Influencers is "that copywritten music is not to be used . . . ." SME SOF ¶ 36. As a condition for compensation from Bang, the Influencers are instructed to submit their videos to Bang's audit team for pre-approval. SME SOF ¶ 37.[8] Bang's Social Media

---

[6] Defendants' response to this asserted undisputed fact is: "Disputed. Bang does not control Influencers' social media accounts as Bang does not have access to Influencers' social media passwords, or post videos on behalf of Influencers. (See D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996-VPX-SME-039997; Dec. of Meg Owoc dated July 28, 2022 at ¶ 10). In the event that posted Influencer Videos do not meet the guidelines and terms of the Influencers' agreements, the Influencers are not compensated, even if those Influencer Videos purportedly 'promote Bang' *Id.* at ¶ 9." This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 31 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2). Additionally or alternatively, the record evidence cited by Defendants affirms rather than contradicts the fact asserted by Plaintiffs in ¶ 31.

[7] Defendants' response to this asserted undisputed fact is: "Disputed. Bang does not maintain supervision, direction, or control over Influencers' social media accounts as Bang does not have access to Influencers' social media passwords, or post videos on behalf of Influencers. (See D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996-VPX-SME-039997; Dec. of Meg Owoc dated July 28, 2022 at ¶ 10). In the event that posted Influencer Videos do not meet the guidelines and terms of the Influencers' agreements, the Influencers are not compensated, even if those Influencer Videos purportedly 'promote Bang' *Id.* at ¶ 9. Bang does not have the legal right or practical ability to remove the influencer videos. *Id.* at ¶ 13." This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 33 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2). Additionally or alternatively, the record evidence cited by Defendants affirms rather than contradicts the fact asserted by Plaintiffs in ¶ 33.

[8] Defendants' response to this asserted undisputed fact is: "Disputed. Any Influencer Videos can be posted at any time without Bang approval, even if those Influencer Videos purportedly promote Bang as Bang does not control Influencers' social media accounts—Bang does not have access to Influencers' social media passwords, or post videos on behalf of Influencers. (*See* D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996—

Guidelines and agreements with the Influencers include specifications about how Bang's products must be featured in the Influencer Videos, such as requiring that the Influencers "tag" various social media accounts of both Defendants in their social media posts "in order to receive compensation." SME SOF ¶ 38.[9]

Defendants have directly posted at least 286 videos that include the recordings at issue on Defendants' various TikTok, Instagram, YouTube, Facebook, and Triller accounts. SME SOF ¶ 21.[10] The Influencers have posted, in the aggregate, at least 98 Influencer Videos that promote Bang using the subject recordings, 32 of which were identified by Plaintiffs in the First Amended Complaint, 66 of which were discovered after the filing of the First Amended Complaint, and 25 of which were discovered in recent weeks.  SME SOF ¶ 29.

TikTok has two libraries: (1) a "library of licensed music," is a general music library (the "General Music Library"); and (2) a "Commercial Music Library." SME SOF ¶ 43.[11] The General Music Library is and at all relevant times has been subject to TikTok's Terms of Service

---

VPX-SME-039997; Dec. of Meg Owoc dated July 28, 2022 at ¶ 7-10)." This statement by Defendants only clearly challenges the assertion in ¶ 37 that "no Influencer Video can be posted unless it has been pre-approved by Bang's audit team," which the Court has omitted from the Background section. This statement by Defendants does not otherwise "clearly challenge" the fact asserted by Plaintiffs in ¶ 37 and therefore does not create a genuine dispute of fact as to the remainder of Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

[9] Defendants' response to this asserted undisputed fact is: "Disputed to the extent that Plaintiffs allege Bang supervises, directs or controls Influencers' social media accounts, as Bang does not have access to Influencers' social media passwords, or post videos on behalf of Influencers. (*See* D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996—VPX-SME-039997; Dec. of Meg Owoc dated July 28, 2022 at ¶ 7-10)." This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 38 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

[10] Defendants' response to this asserted undisputed fact is: "Disputed. 22 of the videos identified by Plaintiffs do not include the "Recordings," but instead contain songs that do not correspond to the original work that Plaintiffs produced as the songs in the Accused Videos are remixes, contain a different tempo, are sung by an artist different than the artist in the original work that Plaintiff produced, are not part of the uploaded video, are of a very short duration, and/or are unrecognizable in the video. (*See* Declaration of Gideon Eckhouse dated July 28, 2022, at ¶ 4.)" For the reasons stated in section III.B. *infra*, this statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 21 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

[11] Defendants' response to this asserted undisputed fact is: "Disputed. TikTok did not have a 'commercial music library' until May 2020. (*See* Declaration of Kevin Long dated July 28, 2022 ("Long Dec.") at ¶ 4, Cosgrove Dep. at 24:4-10.)" This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 43 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

that provide that music in that library is for "personal, non-commercial use." SME SOF ¶ 44.[12] Instagram's Terms of Use also prohibit the unlicensed "[u]se of music for commercial or non-personal purposes." SME SOF ¶ 51. According to Bang's Chief IP Counsel, after Bang received three different cease-and-desist demands from three different music recording companies, Bang understood Instagram's terms and conditions to contain warnings prohibiting the use of copyrighted music. SME SOF ¶ 52.[13] Defendant Owoc never reviewed Instagram's or TikTok's terms and conditions or inquired whether the platforms' terms and conditions allowed for the commercial use of music. SME SOF ¶ 53. There is no evidence of either Bang or Owoc ever reviewing the terms and conditions of Facebook, YouTube, or Triller. SME SOF ¶ 54. There is no evidence that any platform ever purported to sublicense to Defendants to commercially use Plaintiffs' recordings without receiving licenses from Plaintiffs. SME SOF ¶ 55.[14] Two of Bang's deponents testified that they were unaware of any communications with Instagram regarding the use of music. SME SOF ¶ 56.

There are no licenses from Plaintiffs to Defendants to commercially use the recordings. SME SOF ¶ 57. Nor are there licenses from Plaintiffs to any of the platforms that would permit end users of any of the platforms to use the recordings for commercial purposes. SME SOF ¶ 58.

---

[12] Defendants' response to this asserted undisputed fact is: "Disputed. The General Music Library 'was available for brands, was available within [TikTok's] ads programs and platforms.' (*Id.* at 24:21-25:2.)" This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 44 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

[13] Defendants' response to this asserted undisputed fact is: "Disputed. Before Instagram introduced 'Reels,' Instagram did not have a music library. (*See* D.E. 133-5, Comacho Dep. at 42:9-25). After Instagram introduced Reels, Bang understood that music from Instagram's Reels music library allowed the use of copyrighted music. (*Id.* at 59:12-60:18.)" This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 52 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

[14] Defendants' response to this asserted undisputed fact is: "Disputed. 'TikTok encourage[s] the use of music on its platform.' (*See* Long Dec. at ¶ 4, Cosgrove Dep. at 38:12-23.) TikTok assisted Bang in the use of music on its platform without Bang obtaining music licenses. (*Id.* at 86:1-25.)" This statement by Defendants only clearly challenges the assertion in ¶ 55 that there is "no evidence that any Platform ever . . . encourage[d] Defendants to commercially use music on its platforms." This statement by Defendants does not otherwise "clearly challenge" the fact asserted by Plaintiffs in ¶ 55 and therefore does not create a genuine dispute of fact as to the remainder of Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

Plaintiffs' April 2021 cease-and-demand identified 252 instances of claimed infringement of the recordings and demanded that all such infringing content be removed from the platforms. SME SOF ¶ 60. Defendants responded to Plaintiffs' letter stating that Bang does "not agree with [Plaintiffs'] contentions of infringement." SME SOF ¶ 61. Despite such demands, Defendants did not direct the Influencers to take down their videos. SME SOF ¶ 63.[15]

Plaintiffs initiated this action on August 3, 2021. *See* [DE 1]. Plaintiffs sued Defendants for direct copyright infringement for videos posted on their own social media accounts (Count I). *See* [DE 29]. Plaintiffs also asserted claims for contributory and/or vicarious copyright infringement against Defendants based on the videos posted by the Influencers on their personal social media accounts (Count II). *See id.* In response, Defendants asserted 18 affirmative defenses, including an affirmative defense for fair use. *See* [DE 30].

Both parties now move for summary judgment in their favor. Plaintiffs move for partial summary judgment in their favor as to the issue of liability for 203 of the recordings at issue. *See* [DE 132]; [DE 183/188 (sealed)] at 5 n.6. Plaintiffs also move for summary judgment as to over a dozen of Defendants' affirmative defenses and willful infringement. *Id.* Defendants move for summary judgment in their favor as to damages and certain of Plaintiffs' claims of infringement. *See* [DE 126/128].

---

[15] Defendants' response to this asserted undisputed fact is: "Disputed to the extent that Plaintiffs allege that Defendants had an obligation to direct influencers to take down videos: Defendants do not maintain supervision, direction, or control over Influencers' social media passwords, or post videos on behalf of Influencers. (*See* D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996—VPX-SME-039997; Dec. of Meg Owoc dated July 28, 2022 at ¶ 10). Defendants do not have the legal right or practical ability to remove the influencer videos. *Id.* at ¶ 13. Undisputed that Defendants did not direct the Influencers to take down their videos." Because only the last sentence addresses the fact asserted by Plaintiffs in ¶ 63, the Court treats Plaintiffs' asserted undisputed fact in ¶ 63 as undisputed.

## II.  STANDARD OF REVIEW

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### III.     PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

In their Motion for Partial Summary Judgment, Plaintiffs contend that they are entitled to partial summary judgment in their favor as to liability for copyright infringement, as to their claims for direct infringement (Count I) against both Defendants and their claims for contributory and/or vicarious infringement (Count II) for the Influencer Videos against Bang.[16]

A plaintiff asserting a copyright infringement claim must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). If ownership is established and "subjective determinations regarding the similarity between two works" are not required of the fact finder, then "summary judgment is appropriate" on a copyright infringement claim. *See Peter Letterese and Assocs., Inc. v. World Inst. of Scientology Enter.*, 533 F.3d 1287, 1302 (11th Cir. 2008) (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999)).

Here, Plaintiffs contend that there is no genuine dispute as to ether element of copyright infringement and therefore that they are entitled to partial summary judgment as to the issue of liability. Plaintiffs also seek summary judgment on willful infringement and on over a dozen of Defendants' affirmative defenses. As set forth below, based upon the undisputed material facts, the evidence in the record, and the parties' arguments, Plaintiffs are entitled to partial summary judgment against Defendants as to the issue of liability as to their claims for direct infringement (Count I) and against Bang as to the issue of liability for their claims for vicarious infringement for the Influencer Videos (Count II). However, Plaintiffs are not entitled to summary judgment against Bang as to the issue of liability for their claims for contributory infringement for the Influencer Videos (Count II). Plaintiffs are also not entitled to summary judgment for

---

[16] Plaintiffs state that they have not moved for summary judgment against Owoc individually with respect to Plaintiffs' claims for secondary liability. *See* [DE 183/188 (sealed)] at 5 n.7.

Defendants' affirmative defenses or for willful infringement.

## A.   **Plaintiffs Own or Control the Subject Copyrights**

It is undisputed that Plaintiffs own and/or control valid copyrights for the copyrighted recordings at issue in this case, as Plaintiffs have established ownership or an exclusive license for each of the subject copyrighted musical works for which they seek summary judgment.[17] *See* SME SOF ¶¶ 4–9 *supra*; *see also* Bang SOF ¶¶ 56–59. Defendants' bare, unsupported contention in response that "Plaintiffs . . .  fail to sufficiently prove ownership as to all of the remaining songs for purposes of summary judgment" is wholly insufficient to create a genuine dispute as to Plaintiffs' ownership of the subject copyrighted works. *See, e.g., Rosa-Nales v. Carnival Corp.*, No. 12-22172-CIV, 2013 WL 7219411, at *5 (S.D. Fla. Dec. 11, 2013) ("[The Court] is not required to 'scour the record' looking for evidence to support a party's arguments.").

Defendants only specifically challenge Plaintiffs' claims of ownership with respect to seven songs. First, Defendants argue in their response that Plaintiffs' have provided no admissible evidence of ownership for "Oh My God" by Adele.  Second, Defendants argue in their motion for summary judgment that Plaintiffs have provided no evidence of copyright ownership for the following six songs contained in seven of the infringing videos: "Check On It" by Beyoncé; "I'm A Grown Woman" by Beyoncé; "Beg For It" by Chris Brown; "1,2 Step" by Ciara featuring Missy Elliot; "Put Your Head On My Shoulder" by Paul Anka; and "It's Beginning To Look A Lot Like Christmas" by Perry Como & The Fontane Sisters. The Court rejects both of Defendants arguments.

---

[17] Defendants appear to take issue with the fact that the eight videos and songs for which Plaintiffs assert they are not seeking summary judgment are still listed in Plaintiffs' cited exhibits, contending that Plaintiffs, "by their own admission" are not entitled to summary judgment as to those eight songs. Of course, if Plaintiffs are not seeking summary judgment as to these eight songs, the Court will not grant summary judgment as to those eight songs. Further, because it is improper for a non-moving party to seek summary judgment in response to a motion for summary judgment, the Court will not consider Defendants' numerous requests for summary judgment raised throughout their response to Plaintiffs' motion. *See generally* [DE 170].

First, Plaintiffs have offered competent testimony and documentation establishing its rights to "Oh My God" by Adele, including a copy of the copyright registration listing Plaintiffs under "Rights and Permissions." *See, e.g.*, [DE 136/143 (sealed)] at ¶ 90; [DE 187] at ¶¶ 3–6; [DE 187-1]; *see also Sony Music Ent. v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 226 (E.D. Va. 2019) ("Uncontroverted testimony is valid ownership evidence, and can supplement the registration information to establish a presumption of ownership."). Second, Defendants waived their second argument by merely incorporating it by reference in a response to the instant motion. Even assuming that the argument was properly raised, it would not defeat Plaintiffs' evidence of ownership. Plaintiffs have withdrawn their infringement claim for "Put Your Head On My Shoulder" by Paul Anka, and have provided sufficient proof of ownership for all five remaining songs identified by Defendants. *See, e.g.*, Bang SMF ¶¶ 41, 43, [DE 162/174 (sealed)]; [DE 161/173 (sealed)] at 6 n.3.

Because Plaintiffs have provided uncontroverted evidence of ownership of the subject copyrighted works, including those Defendants have specifically challenged, the Court finds that Plaintiffs have met their burden at summary judgment as to their ownership of the copyrighted works.[18]

**B.  Direct Infringement (Count I)**

Defendants do not dispute that they have directly posted approximately 264 videos

---

[18] In their motion for summary judgment, Defendants also argue that Plaintiffs have provided a duplicate URL for 10 of the infringing videos in the exhibits attached to Plaintiffs' First Amended Complaint. It is unclear what relevance a duplicate URL has to evidence of ownership of copyrighted works. In any event, Plaintiffs contend, and the Court agrees, that Defendants misconstrue the exhibits attached to Plaintiffs' First Amended Complaint. As the First Amended Complaint makes clear, Exhibit 1 identifies the infringing URLs; Exhibit 2 identifies which URLs remained posted as of the time of filing. *Compare* [DE 29] at ¶ 73 ("Exhibit 1 contains illustrative, non-exhaustive examples of known infringements.") *with* [DE 29] at ¶ 83 ("Exhibit 2 annexed to this complaint contains a list of Infringing Videos that remain on Bang's Social Media Accounts despite the fact that Sony Music previously informed Bang that the videos were infringing."). Further, Plaintiffs provided an updated list identifying the infringing videos subject to Plaintiffs' copyright claims. *See* [DE 136-7/154 (conventionally filed)].

utilizing portions of Plaintiffs' copyrighted works. SME SOF ¶ 21. Nor do Defendants dispute

that Plaintiffs issued no licenses, either to Defendants or to the social media platforms identified

in Plaintiffs' claims, authorizing use of the copyrighted works for commercial purposes. SME

SOF ¶¶ 57–58. Nevertheless, Defendants attempt to dispute Plaintiffs' evidence of direct

infringement with respect to 22 of approximately 286 videos with the following response:

> Disputed. 22 of the videos identified by Plaintiffs do not include the "Recordings,"
> but instead contain songs that do not correspond to the original work that Plaintiffs
> produced as the songs in the Accused Videos are remixes, contain a different tempo,
> are sung by an artist different than the artist in the original work that Plaintiff
> produced, are not part of the uploaded video, are of a very short duration, and/or
> are unrecognizable in the video. (*See* Eckhouse Dec. dated June 28, 2022 at ¶ 4).

SME SOF ¶ 21, [DE 171]. Defendants' boilerplate list of potential factual disputes as it pertains

to 22 different videos, unaccompanied by any explanation, does not "clearly challenge" the fact

asserted by Plaintiffs in SME SOF ¶ 21 and therefore does not create a genuine dispute as to

Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2). Defendants' use of the "and/or" conjunction

further compounds this insufficiency, making it unclear which of the asserted "disputes" pertain

to which of the 22 cited videos. Accordingly, Defendants' response to Plaintiffs' asserted

undisputed material fact ¶ 21 regarding the 22 videos is wholly insufficient to create a dispute of

fact as to whether the 22 videos contain songs that do not correspond to Plaintiffs' copyrighted

works. SME SOF ¶ 21.

Defendants also point to their asserted undisputed facts in support of their own motion for

summary judgment to dispute Plaintiffs' evidence of direct infringement. The Court does not

find that these asserted facts create a genuine issue of material fact regarding direct infringement.

First, for much of the same reasons Defendants' response to SME SOF ¶ 21 is wholly

insufficient to create a dispute of fact, the following asserted fact is insufficient to create a

dispute of fact regarding the videos identified by Defendants:

> For the Accused Videos that have been produced, Defendants' review indicates that 24 of the videos contain songs that do not correspond to the original work that was produced by Plaintiff, as the songs in the Accused Videos are remixes or sung by an artist different than the artist in the original work that Plaintiff produced. *Id.* at ¶ 6.

Bang SOF ¶ 44, [DE 127/129 (sealed)]. Once again, merely asserting a boilerplate list of potential factual disputes as it pertains to 24 different videos, unaccompanied by any effort at developing an argument, is wholly insufficient to create a dispute of fact regarding direct infringement. The only videos specifically discussed by Defendants in their asserted facts are those associated with the songs ". . . Baby One More Time" by Brittany Spears and "All I Want For Christmas Is You" by Mariah Carey. Bang SOF ¶¶ 45–47. However, the record evidence cited by Defendants in support of these facts—namely, the accused videos and the copyrighted works—fails to create a dispute of fact that the videos contain anything other than the copyrighted sound recordings for those two works. No reasonable juror could find otherwise. In addition, Defendants' bare, unsupported contention that "[e]ven as to the remaining videos, Plaintiffs are not entitled to summary judgment on the issue of copying merely because the remaining videos contain very limited portions of Plaintiffs' music . . ." is wholly insufficient to create a genuine dispute as to Plaintiffs' claims of direct infringement without any meaningful discussion of any of the videos. *See, e.g., Rosa-Nales*, 2013 WL 7219411, at *5.

Based on the foregoing, it is undisputed that Defendants directly posted approximately 286 social media videos utilizing portions of Plaintiffs' copyrighted works, works neither Defendants nor the social media platforms were authorized to use for commercial purposes. SME SOF ¶¶ 21, 57–58; [DE 136-8]. "Courts have found that the unauthorized reproduction, distribution, and public performance of sound recordings via the internet violates the Copyright Act." *UMG Recording, Inc. v. Escape Media Grp., Inc.*, No. 11 CIV. 8407, 2014 WL 5089743,

at *19 (S.D.N.Y. Sept. 29, 2014). Thus, as this Court found in *UMG Recordings, Inc., et al. v. Vital Pharms., Inc., et al.*, the fact finder need not make any subjective determinations regarding the similarity between two works to establish the second element of a copyright infringement claim, copying of constituent elements of the work that are original. *See, e.g., UMG Recordings, Inc. v. Vital Pharms., Inc.*, No. 21-CV-60914-CIV, 2022 WL 2670339, at *7 (S.D. Fla. July 11, 2022); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC,* 384 F. Supp. 3d 743, 761 (W.D. Tex. 2019) (holding that "a side-by-side comparison might be probative" where plaintiffs allege that their copyrights were infringed by the creation of substantially similar, but not identical, derivative works, which might raise a question of substantial similarity," but is not required where the plaintiffs are instead asserting that their copyrights were infringed by distribution of exact copies of their works).

Both elements of a direct copyright infringement claim having been established based upon the undisputed material facts, *see Feist Publ'ns*, 499 U.S. at 361, Plaintiffs are entitled to partial summary judgment against Defendants as to the issue of liability as to their claims for direct infringement (Count I).

## C. Contributory and/or Vicarious Infringement (Count II)

It is also undisputed that the Influencers have posted, in the aggregate, approximately 98 Influencer Videos that promote Bang using Plaintiffs' copyrighted works.  SME SOF ¶ 29; [DE 136-8].

In Count II, Plaintiffs contend that Bang is liable for contributory and/or vicarious copyright infringement for the Influencer Videos. The Court addresses each of these secondary or indirect liability theories, in turn. However, the Court notes that "the Eleventh Circuit recognizes that there are no clear distinctions between these various theories of liability."

*Michael Grecco Prods., Inc. v. RGB Ventures, LLC*, No. 3:16-CV-1335-J-34PDB, 2017 WL
4077045, at *5 (M.D. Fla. Sept. 14, 2017) (citing *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir.
1987) (quoting *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984) ("[T]he
lines between direct infringement, contributory infringement and vicarious liability are not
clearly drawn.")).

      (1)    *Contributory Copyright Infringement for the Influencer Videos*

"One infringes contributorily by intentionally inducing or encouraging direct
infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).
*See also Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1242 n.6 (11th Cir. 2014) ("A claim
of contributory copyright infringement arises against one who intentionally induces or
encourages the direct infringement of another.").  *See, e.g., Michael Grecco Prods.*, 2017 WL
4077045, at *5 (allegations, taken together, of providing the means for the third-party
distributors to infringe plaintiff's copyrights, actually assisting in the distribution of the
copyrighted material pursuant to its marketing and sub-license agreements with the third-party
distributors, and failing to act to prevent further infringement when it was in a position to do so,
sufficient to state a plausible claim for contributory infringement). The test for contributory
infringement is whether a defendant "[k]now[s], or [has] reason to know" of the infringing
conduct of others and induces or materially contributes to such infringement. *Cable/Home
Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990).

In their motion for summary judgment, Plaintiffs argue that Bang is liable for
contributory copyright infringement because the undisputed facts demonstrate that Bang knew or
had reason to know of the Influencers' infringements and in fact materially contributed to the

Influencers' infringements. In support of Bang's knowledge, Plaintiffs cite to the following undisputed facts:

Bang maintains supervision, direction, and control over the Influencer Videos through Bang's "audit team." SME SOF ¶ 33. [19] Bang's audit team ensures the Influencers' compliance with Bang's Social Media Guidelines, the platforms' respective social media guidelines, and relevant laws, including but not limited to copyright laws. SME SOF ¶ 34. According to Bang's Chief IP Counsel, after Bang received three different cease-and-desist demands from three different music recording companies, Bang understood Instagram's terms and conditions to contain warnings prohibiting the use of copyrighted music. SME SOF ¶ 52.[20] There are no licenses from Plaintiffs to Bang to commercially use the recordings. SME SOF ¶ 57. Plaintiffs' April 2021 cease-and-demand identified 252 instances of claimed infringement of the recordings and demanded that all such infringing content be removed from the platforms. SME SOF ¶ 60. Despite such demands, Bang did not direct the Influencers to take down their videos. SME SOF ¶ 63.[21]

---

[19] Defendants' response to this asserted undisputed fact is: "Disputed. Bang does not maintain supervision, direction, or control over Influencers' social media accounts as Bang does not have access to Influencers' social media passwords, or post videos on behalf of Influencers. (See D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996-VPX-SME-039997; Dec. of Meg Owoc dated July 28, 2022 at ¶ 10). In the event that posted Influencer Videos do not meet the guidelines and terms of the Influencers' agreements, the Influencers are not compensated, even if those Influencer Videos purportedly 'promote Bang' *Id.* at ¶ 9. Bang does not have the legal right or practical ability to remove the influencer videos. *Id.* at ¶ 13." This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 33 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2). Additionally or alternatively, the record evidence cited by Defendants affirms rather than contradicts the fact asserted by Plaintiffs in ¶ 33.

[20] Defendants' response to this asserted undisputed fact is: "Disputed. Before Instagram introduced 'Reels,' Instagram did not have a music library. (*See* D.E. 133-5, Comacho Dep. at 42:9-25). After Instagram introduced Reels, Bang understood that music from Instagram's Reels music library allowed the use of copyrighted music. (*Id.* at 59:12-60:18.)" This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 52 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

[21] Defendants' response to this asserted undisputed fact is: "Disputed to the extent that Plaintiffs allege that Defendants had an obligation to direct influencers to take down videos: Defendants do not maintain supervision, direction, or control over Influencers' social media passwords, or post videos on behalf of Influencers. (*See* D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996—VPX-SME-039997; Dec. of Meg Owoc dated July 28, 2022 at ¶ 10). Defendants do not have the legal right or practical ability to remove the influencer videos. *Id.*

In response, Bang argues that knowledge of the videos is not the same as knowledge of the infringement and there is evidence from which a reasonable juror could infer Bang reasonably believed that the Influencers' use of Plaintiffs' copyrighted works was not prohibited. The Court agrees. While Plaintiffs have submitted evidence from which a reasonable juror could conclude that Bang knew or had reason to know of the Influencers' infringement, Bang has also submitted evidence from which a juror could conclude that Bang reasonably and in good faith believed that its use—and thereby the Influencers' use—of Plaintiffs' copyrighted works was not barred by law. While Plaintiffs have offered significant evidence to rebut Bang's evidence, it is not the province of the Court to weigh the credibility of evidence on a motion for summary judgment.  Accordingly, disputes of fact remain regarding whether Bang knew or had reason to know of the infringing conduct.

In support of the material contribution element of their contributory infringement claim, Plaintiffs state in their summary judgment motion that "Bang engaged the Influencers to make the videos; Bang paid the Influencers to make the videos; Bang supplied the products to be promoted by the Influencers in their videos; Bang assisted in the production and editing of the videos; Bang took ownership of the Influencers' videos; Bang reviewed and approved the posting of every video by the Influencers, including, necessarily, the music used in the video; and Bang made no efforts to remove the Influencers' videos, even after receiving numerous cease-and-desist demands . . . ." [DE 132] at 16–17. In response, Bang points out that Plaintiffs' fail to cite to evidence supporting these asserted facts; instead, Plaintiffs cite only to SME SOF ¶ 52 and ¶ 60, which merely state that Bang reviewed and understood Instagram's terms and conditions to contain warnings prohibiting the use of copyrighted music and Plaintiffs' April

---

at ¶ 13. Undisputed that Defendants did not direct the Influencers to take down their videos." Because only the last sentence addresses the fact asserted by Plaintiffs in ¶ 63, the Court treats this fact as undisputed.

2021 cease-and-desist demand identified 252 instances of claimed infringement of Plaintiffs'
copyrighted works and demanded such infringing conduct be removed. In reply, Plaintiffs argue
in a footnote that, contrary to Bang's contention in response, the facts supporting secondary
liability against Bang and corresponding references are set forth in the background section of
Plaintiffs' motion, and then go on to cite to that evidence. As noted above, it is not the Court's
task to "scour the record"—or in this case, the parties' background statement of facts—in search
of evidence supporting a party's arguments.  *See, e.g., Rosa-Nales*, 2013 WL 7219411, at *5
("[The Court] is not required to 'scour the record' looking for evidence to support a party's
arguments."). Because Plaintiffs failed to point to this evidence in Plaintiffs' motion for
summary judgment in support of its arguments regarding material contribution for Plaintiffs'
contributory infringement claim, they will not be considered at this juncture. *See, e.g. Herring v.
Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have
repeatedly admonished, arguments raised for the first time in a reply brief are not properly before
a reviewing court.") (internal quotes omitted). Thus, Plaintiffs have not established the second
part of the test for contributory infringement, material contribution to the infringing conduct.

Based upon the foregoing, Plaintiffs are not entitled to summary judgment as to their
theory of contributory copyright infringement in Count II.

(2)     *Vicarious Copyright Infringement for the Influencer Videos*

"One infringes vicariously by profiting from direct infringement while declining to
exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545
U.S. 913, 930 (2005) (citations omitted).  Vicarious infringement requires both a direct financial
benefit from the direct infringement and the "right and ability to supervise a party responsible for
direct infringement." *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*, No. 12-22539-

CIV, 2014 WL 7272974, at *5 (S.D. Fla. Dec. 18, 2014) (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) ("[T]o succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement.... [T]he 'control' element [is satisfied by a plaintiff showing that] a defendant ... has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."). "[V]icarious liability may exist even if the third party was in no way directly involved in the actual copying." *Rams v. Def Jam Recordings, Inc.*, 202 F. Supp. 3d 376, 385 (S.D.N.Y. 2016).

Here, Plaintiffs argue that the undisputed facts demonstrate both requirements—requisite control and direct financial benefit—and therefore that Bang is liable for vicarious copyright infringement.

First, regarding Bang's alleged failure to exercise a right to stop or limit the Influencer's direct infringement, Plaintiffs argue that Bang retained the right and ability to supervise, approve, reject, and remove the Influencer Videos that Bang owned both through Bang's agreements with the Influencers and through Bang's audit team. Specifically, Plaintiffs point out that Bang owns the Influencer Videos, either through work for hire agreements or assignments by the Influencers to Bang. SME SOF ¶ 28.[22] Under the terms of Bang's agreements with the Influencers, the Influencers are subject to Bang's supervision, direction, and control with respect to the promotion of Bang. SME SOF ¶ 31.[23] Bang has promulgated guidelines for the Influencers

---

[22] Defendants' response to this asserted undisputed fact is: "Disputed. Bang owns influencer content only to the extent the content was produced or created in performing the services under each influencer's respective agreement with Bang." (See D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996—VPX-SME-039997). Bang does not own any other influencer content, including content that may feature Bang or Bang products. *Id.*" This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 28 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

[23] Defendants' response to this asserted undisputed fact is: "Disputed. Bang does not control Influencers' social media accounts as Bang does not have access to Influencers' social media passwords, or post videos on behalf of Influencers. (See D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996-VPX-SME-039997; Dec.

directing them on how to promote and market Bang and its related products in the Influencer

Videos (the "Social Media Guidelines"). SME SOF ¶ 32. Bang maintains supervision, direction,

and control over the Influencer Videos through Bang's "audit team." SME SOF ¶ 33. [24] Bang's

audit team ensures the Influencers' compliance with Bang's Social Media Guidelines, the

platforms' respective social media guidelines, and relevant laws, including but not limited to

copyright laws. SME SOF ¶ 34. For example, Plaintiffs point out that Bang requires that the

Influencers' videos include the words "#ad" or "#sponsor" to be complaint with Federal Trade

Commission rules. SME SOF ¶ 35. Bang's policy for itself and its Influencers is "that

copywritten music is not to be used . . . ." SME SOF ¶ 36. And, as a condition for compensation

from Bang, the Influencers are instructed to submit their videos to Bang's audit team for pre-

approval. SME SOF ¶ 37.[25] Plaintiffs also assert that Bang made no effort to remove the

---

of Meg Owoc dated July 28, 2022 at ¶ 10). In the event that posted Influencer Videos do not meet the guidelines and terms of the Influencers' agreements, the Influencers are not compensated, even if those Influencer Videos purportedly 'promote Bang' *Id.* at ¶ 9." This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 31 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2). Additionally or alternatively, the record evidence cited by Defendants affirms rather than contradicts the fact asserted by Plaintiffs in ¶ 31.

[24] Defendants' response to this asserted undisputed fact is: "Disputed. Bang does not maintain supervision, direction, or control over Influencers' social media accounts as Bang does not have access to Influencers' social media passwords, or post videos on behalf of Influencers. (See D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996-VPX-SME-039997; Dec. of Meg Owoc dated July 28, 2022 at ¶ 10). In the event that posted Influencer Videos do not meet the guidelines and terms of the Influencers' agreements, the Influencers are not compensated, even if those Influencer Videos purportedly 'promote Bang' *Id.* at ¶ 9. Bang does not have the legal right or practical ability to remove the influencer videos. *Id.* at ¶ 13." This statement by Defendants does not "clearly challenge" the fact asserted by Plaintiffs in ¶ 33 and therefore does not create a genuine dispute of fact as to Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2). Additionally or alternatively, the record evidence cited by Defendants affirms rather than contradicts the fact asserted by Plaintiffs in ¶ 33.

[25] Defendants' response to this asserted undisputed fact is: "Disputed. Any Influencer Videos can be posted at any time without Bang approval, even if those Influencer Videos purportedly promote Bang as Bang does not control Influencers' social media accounts—Bang does not have access to Influencers' social media passwords, or post videos on behalf of Influencers. (*See* D.E. 133-20, at VPX-SME-031882; D.E. 133-21, at VPX-SME-039996—VPX-SME-039997; Dec of Meg Owoc dated July 28, 2022 at ¶ 7-10)." This statement by Defendants only clearly challenges the assertion in ¶ 37 that "no Influencer Video can be posted unless it has been pre-approved by Bang's audit team," which the Court has omitted from the Background section. This statement by Defendants does not otherwise "clearly challenge" the fact asserted by Plaintiffs in ¶ 37 and therefore does not create a genuine dispute of fact as to the remainder of Plaintiffs' asserted fact. *See* Local Rule 56.1(a)(2).

Influencer Videos even after receiving multiple cease-and-desist demands. *See, e.g.*, SME SOF ¶¶ 60, 63.

In response, Bang argues that Plaintiffs present no evidence that would tend to establish that Defendants have any sort of legal right, let alone practical ability, to stop influencers from posting the allegedly infringing videos.  Based upon the undisputed material facts referenced in the preceding paragraph, the Court disagrees.

Bang concedes that the Influencers are supposed to submit their videos to Bang, including the music in those videos, to receive payment from Bang. Nevertheless, Bang argues that such is not always the case—some videos were purportedly not submitted to Bang for review prior to being posted online, as required by the terms of the agreement. Thus, Bang contends that they have not paid and were not required to pay for those videos. But the mere fact that Bang might not have control over the posting of videos they did not pay for is not relevant to whether Bang had the legal right or practical ability to stop the posting of the infringing videos that are the subject of Plaintiffs' claims in this case. *See, e.g.*, *Anderson*, 477 U.S. at 247–48 (holding that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment") (emphasis in original). Indeed, Bang does not make any meaningful argument that Plaintiffs have brought claims for Influencer Videos Bang never paid for.  Nor does Bang contend that any such videos were not paid for because they infringed on Plaintiffs' copyrighted works.

The Court also rejects Bang's remaining arguments that Bang had neither the legal right nor practical ability to stop Influencers from posting the allegedly infringing videos because they do not have access to the Influencers' social media passwords or post videos on behalf of Influencers. That Bang did not have access to the Influencers' accounts does not mean that Bang

did not have the legal right or practical ability to stop the conduct by withholding compensation. Accordingly, the Court finds that Plaintiffs have met their burden at summary judgment as to the requisite control element of vicarious infringement claim based on Bang's failure to exercise its right to stop or limit the Bang Influencer's direct infringement.

The second element of a vicarious infringement claim is direct financial benefit. For purposes of vicarious liability, a financial benefit does not have to be "substantial." *Rams*, 202 F. Supp. 3d at 385 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)). "Financial benefit exists where the availability of infringing material 'acts as a draw for customers.'" *Id.* (quoting *A & M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001)).

It is apparent from the record that Bang earned a direct financial benefit from the infringement. First, it is undisputed that Bang markets its products through social media posts, including by engaging Influencers to promote and market Bang and its related products through the Influencers' videos on social media platforms. SME SOF ¶¶ 14, 25. Indeed, Bang spends tens of millions of dollars annually on its promotion through social media. SME SOF ¶ 18. Bang received a financial benefit from the infringing recordings, which served as a draw for Bang customers. *See, e.g.*, SME SOF ¶ 24 ("Bang believes popular music, such as Plaintiffs' recordings, gives social media posts "the WOW factor."). Further evidencing direct financial benefit is the fact that Bang agrees to pay the Influencers a 15% commission from its own profits for any Bang products purchased using that Influencer's promo code. SME SOF ¶ 30. And, of course, Bang financially benefitted by avoiding having to pay Plaintiffs any license fees for the copyrighted works.

Bang cites to its statement of material facts from its own summary judgment motion to argue that none of Bang's particular social media posts have impacted Bang's sales or profits.

Bang even goes as far to argue that it would have generated the same sales or profits whether music was even used in the videos at all. But "evidence of financial gain is not necessary to prove vicarious liability as long as the [defendant] has an economic incentive to tolerate infringing conduct." *Capitol Recs., LLC v. Escape Media Grp., Inc.*, No. 12-CV-6646 AJN, 2015 WL 1402049, at *42 (S.D.N.Y. Mar. 25, 2015). Based upon the undisputed material facts referenced in the preceding paragraph, Bang has a clear economic incentive to tolerate the infringing videos.

Bang also contends that no evidence exists to show any direct causal relationship between the infringement and any financial benefit to Bang, particularly because only a "small subset of defendant's marketing material contains some infringing conduct." However, to constitute direct financial benefit, "the 'draw' of the infringement need not be primary, or even . . . significant." *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009) (citing *Ellison*, 357 F.3d at 1079). Accordingly, the Court finds that Plaintiffs have met their burden at summary judgment as to second element a of vicarious infringement claim, direct financial benefit.

Both elements of a vicarious copyright infringement claim having been established based upon the undisputed material facts, *Latele Television*, 2014 WL 7272974, at *5, Plaintiffs are entitled to partial summary judgment as to vicarious liability as to their claims for indirect infringement (Count II).

**D.  Affirmative Defenses**

Plaintiffs also request summary judgment on over a dozen of Defendants' affirmative defenses in footnotes throughout their motion. As Defendants point out, addressing legal arguments in footnotes is an incorrect method to present substantive arguments on the merits or

otherwise request relief from the Court. *Connor v. Midland Credit Mgmt., Inc.*, No. 18-23023-CIV, 2019 WL 717413, at *4, n. 1 (S.D. Fla. Feb. 20, 2019) (citing *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580, 2014 WL 5846735, at *2 n.1 (S.D. Fla. Nov. 12, 2014) (not considering argument raised in a footnote); *see also Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (deeming argument waived because it was raised only in a footnote)). Thus, the Court will not address Plaintiffs' request for summary judgment as to Defendants' affirmative defenses.

At the same time, however, Defendants "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the [Court] at the time of the summary judgment motions." *Johnson v. Bd. of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001). Thus, to the extent that Defendants failed to meaningfully raise affirmative defenses—on which they bear the burden of proof—that would have precluded summary judgment as to liability, Defendants have abandoned those defenses. *See, e.g., Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1241–43 (S.D. Fla. 2021) ("The Plaintiffs have moved for partial summary judgment on the liability aspect of their trademark-infringement claim. The Defendants thus had an obligation to assert any arguments or defenses—including affirmative defenses—that (in their view) would've 'precluded' the entry of *that* judgment.") (emphasis in original). Though Defendants are correct that arguments raised in passing in footnotes may be disregarded, "[i]f . . . Defendants believed that the evidence supported an affirmative defense that would've precluded . . . Plaintiffs' claims, they should've raised that defense in their response." *Id.* Instead, Defendants only raised arguments as to fair use. Accordingly, the Court will consider the fair use defense but only to the extent that it was affirmatively raised by Defendants as a basis to deny summary judgment as to liability on

Plaintiffs' claims. Stated differently, the Court will not consider whether Plaintiffs are entitled to summary judgment as to that affirmative defense. The Court now turns to the parties' arguments regarding fair use.

A court must consider the following factors when determining whether there is fair use: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. The Court finds that all four factors show that Defendants' use of Plaintiffs' copyrighted works were not fair use.

First, based on the undisputed material facts, Defendants used Plaintiffs' copyrighted works for a commercial purpose—to market and sell Bang's products to the public. *See Petter Lettersese*, 533 F.3d at 1309–10 (stating that the first factor requires the court to consider whether the defendant derived a commercial benefit from its use of the copyrighted work and whether the defendant's use of the work was transformative); *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417, 451 ("[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright."). Defendants do not attempt to argue that Bang's use of the subject videos were non-commercial; instead, Defendants argue that "Bang's use of a short partial *sound* clip to tell a complete, albeit short, *visual* story about Bang's products provides distinct entertainment value from the songs and transforms their purpose." [DE 170] at 20 (emphasis in original). But characterizing the copyrighted works as providing different entertainment value does not render the use transformative. *See, e.g., Grant v. Trump*, 563 F. Supp. 3d 278, 287

(S.D.N.Y. 2021) (observing that "the [campaign] video incorporates music—like many videos do—to make the video more entertaining and memorable" but that does not render the use transformative, particularly where "there is a well-established market for music licensing"). Defendants do not otherwise argue that they have edited or transformed the copyrighted works in any way. Thus, the first factor weighs against fair use.

The second factor also weighs against fair use because the copyrighted works are original creative works and are therefore "closer to the core of intended copyright protection." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994); *Grant*, 563 F. Supp. 3d at 287–88. Defendants do not address this factor.

With respect to the third factor, the amount and substantiality of the portion used, Defendants contend that Bang only uses "a 'snippet' of the songs in these videos—fifteen seconds on average, or less than 10% of the entire song." [DE 170] at 20. However, "the Supreme Court has directed a qualitative evaluation of the copying of the copyrighted work," finding even "a small degree of taking . . .  sufficient to transgress fair use if the copying is the essential part of the copyrighted work." *Cable/Home*, 902 F.2d at 844 (citing *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 564, (1985)) (collecting cases); *Roy Export Co. Establishment of Vaduz, Liechtenstein, Black, Inc. v. Columbia Broadcasting Sys., Inc.,* 503 F. Supp. 1137, 1145 (S.D.N.Y. 1980) (fifty-five seconds taken from a one-hour and twenty-nine-minute film deemed qualitatively substantial for copyright infringement), *aff'd,* 672 F.2d 1095 (2d Cir.), *cert. denied,* 459 U.S. 826 (1982). It can hardly be said that copyrighted works are qualitatively insubstantial simply because they are included in videos posted to TikTok, a platform Defendants concede is "centered around short videos."  [DE 127/129 (sealed)] at ¶ 24;

27

[DE 126/128 (sealed)] at 5. Defendants otherwise fail to address the substantiality prong of this factor. Thus, the third factor weighs against fair use or is neutral at best.

The fourth factor, effect of the use upon the potential market for or value of the copyrighted work, asks the Court to examine "whether unrestricted and widespread conduct of the sort engaged in by the defendant (whether in fact engaged in by the defendant or others) would result in a substantially adverse impact on the potential market for or value of the plaintiff's present work." *Playboy Enterprises, Inc. v. Frena*, 839 F. Supp. 1552, 1558 (M.D. Fla. 1993) (internal quotations and citations omitted). It is not difficult to comprehend that widespread, uncompensated use of Plaintiffs' works in commercial videos posted to social media platforms would have a significant adverse impact on the market for Plaintiffs' work, undermining Plaintiffs' ability obtain compensation for licensing their music. *Grant*, 563 F. Supp. 3d at 289. The Court rejects Defendants' contention that Bang's conduct benefited Plaintiffs by increasing the exposure and potential sales of Plaintiffs' copyrighted works. First, Defendants fail to cite evidence supporting this contention; instead, Defendants cite to the deposition testimony of Bryan Cosgrove from TikTok, who merely testified that creators of music benefit from the use of music on TikTok. *See, e.g.*, SME SOF ¶¶ 72, 104.[26] Second,

---

[26] Defendants' numbering for Defendants' Additional Facts does not comply with the criteria set forth in the Local Rules. *See* L.R. 56.1, which states in relevant part:

> (b) Form Required for Statements of Material Facts.
> . . .
> > (2) Opponent's Statement of Material Facts.
> > . . .
> > (D) Any additional facts that an opponent contends are material to the motion for summary judgment shall be numbered and placed immediately after the opponent's response to the movant's Statement of Material Facts. The additional facts shall use separately numbered paragraphs **beginning with the next number following the movant's last numbered paragraph**. The additional facts shall be separately titled as "Additional Facts" and may not exceed five (5) pages (beyond the ten-(10) page limit for the opponent' Statement of Material Facts.).

Defendants completely ignore the market for music licensing. *See, e.g.*, SME SOF ¶ 3. The Court also rejects Defendants' contention that the record is devoid of evidence that the market for the copyrighted works declined because of Defendants' videos. It is ultimately Defendants' burden to demonstrate the lack of market harm, and Defendants have failed to point to any evidence in support of their claim that their use of the copyrighted works is unlikely to adversely affect the market. Thus, this factor also weighs against fair use.

Based on the foregoing, the Court finds that each of the four factors favors Plaintiffs. Although these factors are not exclusive, Defendants have not identified any additional relevant factors for the Court to consider. Accordingly, Defendants' fair use defense does not preclude summary judgment as to each of Plaintiffs' claims.

E.   **Willful Infringement**

Willful infringement occurs when the infringer acted with "actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright." *Arista Recs., Inc. v. Beker Enterprises, Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003) (quoting *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F. Supp. 458, 465 (E.D. Pa. 1987)).

Plaintiffs argue that the undisputed material facts conclusively establish that, at minimum, Defendants acted with a recklessness sufficient to impose liability for willful copyright infringement.  The Court disagrees. While Plaintiffs have submitted evidence from which a reasonable juror could conclude that Defendants knew that their conduct constituted copyright infringement or acted with reckless disregard of Plaintiffs' rights, Defendants have also submitted evidence from which a juror could conclude that Defendants reasonably and in

---

L.R. 56.1 (emphasis added). To remedy this non-compliant filing, the Court has re-numbered Defendants' Additional Facts, [DE 171] at 9–13, by beginning with the next number following Plaintiffs' last numbered paragraph (e.g., ¶ 1 is now ¶ 68).

good faith believed that their use of Plaintiffs' copyrighted works was not barred by law. Plaintiffs' arguments to the contrary would be more properly argued to the jury at trial. Accordingly, Plaintiffs have not shown that there is no genuine dispute of material fact as to willfulness and the summary judgment motion is due to be denied in this regard.

### IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In their Motion for Summary Judgment, Defendants contend that Plaintiffs' case is replete with evidentiary flaws that entitle Bang to partial summary judgment as to certain of Plaintiffs' allegations of infringement. Defendants also request summary judgment in their favor on grounds that Plaintiffs have failed to show actual damages and have not proffered any evidence supporting a causal nexus between the infringement and Bang's profits. Several of Defendants' arguments have already been addressed in the Court's discussion *supra*.  These include Defendants' arguments regarding Plaintiffs' ownership and/or control of the subject copyrights, and Defendants' arguments regarding 24 videos that purportedly "contain songs that do not correspond to the original work" produced by Plaintiffs. *See* sections III.A and III.B. *supra*.[27] Accordingly, the Court will address only the remaining issues raised in Defendants' summary judgment motion, regarding certain of Plaintiffs' claims of infringement and damages. The Court addresses these issues, in turn.

### A.  Evidence for Certain Claims of Infringement

Defendants contend that Plaintiffs have failed to provide complete evidence for certain videos and songs to allow the fact finder to conduct a "substantial similarity" comparison, thus entitling Defendants to judgment in their favor with respect to those claims. As discussed *supra*, in this case the fact finder need not make any subjective determinations regarding the similarity

---

[27] In other words, for the same reason Defendants' arguments and evidence fail to create a dispute of fact as to these issues, those same arguments and evidence do not entitle Defendants to judgment in their favor as to such issues.

between two works to establish the second element of a copyright infringement claim. *See* section III.B. *supra*. But even if the fact finder were required to make subjective determinations regarding the similarity between the videos identified by Defendants and the copyrighted works, Defendants would not be entitled to summary judgment for most of the videos.

First, the Court disagrees with Defendants' contention that Plaintiffs failed to produce the 19 infringing videos identified in ¶ 4 of the Long Declaration [DE 127-2]. Seven of those videos were produced.[28] *See* Bang SMF ¶ 42. On September 8, 2022, Defendants withdrew their arguments as it pertains to the 11 other videos subject to Plaintiffs' Motion for Spoliation Sanctions because Defendants have since found and produced the 11 videos.[29] *See* [DE 211]. In any event, Magistrate Judge Becerra entered an Order granting in part and denying in part Plaintiffs' Motion for Spoliation Sanctions on September 13, 2022. *See* [DE 214]. Therein, Magistrate Judge Becerra held that for each of the unproduced videos for which Plaintiffs prove ownership, Plaintiffs are entitled to a rebuttable presumption that Plaintiffs have established the second element of a copyright infringement claim, copying of constituent elements of the work that are original.[30]

Second, Defendants contend that Plaintiffs failed to produce an additional three "original works" for the following songs: "The Spectre" by Alan Walker; "Break My Stride" by Matthew Wilder; and "Put Your Head On My Shoulder" by Paul Anka. But Plaintiffs have withdrawn

---

[28] Those seven (7) videos pertain to the following six (6) songs: "Beg For It" by Chris Brown; "Gimme That (Remix)" by Chris Brown featuring Lil' Wayne; "Beat It" by Michael Jackson; "Billie Jean" by Michael Jackson; "Beautiful Girls" by Sean Kingston; and "Hips Don't Lie" by Shakira (referenced twice).

[29] Those eleven (11) videos pertain to the following songs: "Gimme That (Remix)" by Chris Brown featuring Lil' Wayne; "Say So" by Doja Cat; "Jolene" by Dolly Parton; "Skechers" by DripReport; "Hit the Quan" by iLoveMemphis; "Woah" by KRYPTO9095 featuring D3Mstreet; "Killing Me Softly" by Lauryn Hill; "Lip Gloss" by Lil Mama; "Prayed for You" by Matt Stell; "Bored In The House" by Tyga & Curtis Roach; "Yeah!" by Usher featuring Lil Jon & Ludacris; and "Let's Link" by WhoHeem.

[30] The Court notes that only one of the videos was neither produced by Plaintiffs nor made the subject of Plaintiffs' Motion for Spoliation Sanctions.

their infringement claim for "Put Your Head On My Shoulder" by Paul Anka and have otherwise produced the remaining two recordings identified by Defendants. *See* Bang SMF ¶ 43.

Finally, in reply in support of their motion for summary judgment, Defendants argue for the first time that Defendants are entitled to summary judgment for the eight songs for which Plaintiffs do not seek summary judgment. Because Defendants waited until its reply to make this argument, the Court will not consider it.  *See, e.g., Herring*, 397 F.3d at 1342 (11th Cir. 2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).

Accordingly, Defendants have failed to demonstrate they are entitled to summary judgment with respect to those videos.

**B.  <u>Actual Damages and Causation</u>**

The Copyright Act permits a copyright owner to pursue one of two groups of damages: (1) actual damages and defendant's profits, or (2) statutory damages. 17 U.S.C. § 504. Courts have found that a reasonable licensing fee may be an appropriate measure for determining actual damages. *Coton v. Televised Visual X-Ography, Inc.*, 740 F. Supp. 2d 1299, 1308 (M.D. Fla. 2010). In establishing defendant's profits, "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and elements of profits attributable to factors other than the copyrighted work." *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1278 (M.D. Fla. 2008) (citing 17 U.S.C. § 504(b)). There must also be "some nexus between the infringing activity and the gross revenue figure proffered by a plaintiff." *Ordonez–Dawes v. Turnkey Props., Inc.*, 2008 WL 828124, at *3 (S.D. Fla. Mar. 26, 2008). However, the initial burden on a copyright holder to show such causal

connection is a low one. *See Oceans of Images Photography, Inc. v. Foster & Smith, Inc.*, No.

8:11-CV-1160-T-30AEP, 2012 WL 5878092, at *8 (M.D. Fla. Nov. 21, 2012).

Defendants argue in their summary judgment motion that Plaintiffs cannot show actual

damages nor a causal relationship between the infringement and Bang's profits, and therefore

that Plaintiffs cannot recover damages under 17 U.S.C. § 504(b).[31] The Court disagrees.

Plaintiffs have submitted evidence of license agreements establishing what licensors have paid

for comparable works. *See, e.g., Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1276 (M.D.

Fla. 2008) ("[A] claim for lost profits may include a retroactive license fee measured by what the

plaintiff would have earned by licensing the infringing use to the defendant."). The Court rejects

Defendants' argument regarding Plaintiffs' alleged failure to produce representative license

agreements for videos that are approximately 15 seconds in duration. It is undisputed that 84 of

the infringing videos are more than 15 seconds in duration. Bang SOF ¶ 78. In any event, as this

Court previously stated in the *UMG* action:

> That the TikTok videos are approximately 15 seconds may be a basis for Bang to
> argue to the jury that the actual damages are less than what licensing fees would be
> for use of full songs; it does not follow that these license agreements should not be
> considered in determining the amount of Plaintiffs' actual damages.

[DE 205] at 8–9 in *UMG Recordings, Inc. v. Vital Pharmaceuticals, Inc.*, Case No. 21-cv-60914-

WPD. The Court likewise rejects Defendants' arguments regarding the absence of calculation as

to what the licensing fees might have been. As Defendants concede, "uncertainty as to amount"

---

[31] §504(b) Actual Damages and Profits.--The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

will not preclude a plaintiff from meeting its burden. *Watson v. K2 Design Grp., Inc.*, No. 15-CV-61020, 2016 WL 11783284, at *10 (S.D. Fla. Aug. 9, 2016).[32]

Plaintiffs have also submitted sufficient evidence of a causal connection between the infringement and Bang's profits to survive summary judgment. Defendants' arguments that those profits are attributable to other factors would be more properly argued to the jury at trial. Moreover, Defendants have not cited and the Court is unaware of any authority requiring Plaintiffs to proffer an expert on causation to survive summary judgment. Accordingly, Bang has not shown that there is no genuine dispute of material fact as to actual damages or causation and therefore summary judgment is due to be denied.

## V. CONCLUSION

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that:

1. Plaintiffs' Motion for Partial Summary Judgment [DE 132] is **GRANTED IN PART AND DENIED IN PART** as follows:

    (a) As to Count I:  Plaintiffs are entitled to partial summary judgment as to the issue of liability on their claims against Defendants for direct infringement;

    (b) As to Count II: Plaintiffs are entitled to summary judgment as to the issue of liability on their claims against Bang for vicarious infringement, but are not entitled to summary judgment as to the issue of liability on their claims against Bang for contributory infringement; and

---

[32] The Court will not address Defendants' request to obtain summary judgment based on *another* measure of actual damages, the loss in value to the infringed works. Because Defendants waited until their reply to seek such piecemeal relief—which the Court notes only pertains to one way of measuring actual damages—the Court will not consider it. *See, e.g., Herring*, 397 F.3d at 1342 ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).

(c)     Plaintiffs are not entitled to summary judgment on Defendants'

affirmative defenses or willful infringement.

2.     Defendants' Motion for Summary Judgment [DE 126/128 (sealed)] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this

14th day of September, 2022.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:
Counsel of record